**UNITED STATES of America, Plaintiff,**

v.

**Randall HOPPER, Defendant.**

**No. 76 CR 219.**

United States District Court,
N. D. Illinois, E. D.

Nov. 29, 1977.

---

Daniel Reidy, Asst. U. S. Atty., Chicago, Ill., for plaintiff.

Raymond D. Pijan, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

· CROWLEY, District Judge.

Defendant, Randall Hopper, pled guilty to an indictment charging him with distribution of 74.5 grams of heroin. On November 23, 1976, in an exercise of discretion and pursuant to the Federal Probation Act, 18 U.S.C. § 3651, et seq., this Court sentenced Randall Hopper to three months on a work release program to be followed by four years and nine months probation. As a condition of probation, Mr. Hopper was ordered to participate in a community oriented drug program. Pursuant to this order, Mr. Hopper enrolled in the Northwestern Hospital Drug Program.

Before the Court at this time is the Government's Motion for a Rule to Show Cause why Mr. Hopper's probation should not be revoked. In support of its motion, the Government alleges that a urinalysis performed at the Metropolitan Correctional Center indicated a positive reaction for morphine-quinine. Apparently in an attempt to determine the scope of Mr. Hopper's alleged heroin use, the Government has subpoenaed Mr. Hopper's records from the Northwestern Drug Program for the period of his treatment there while on probation. Mr. Hopper has consented to the disclosure of certain records. However, his consent is limited to the period of time in which the urinalysis was performed at the Metropolitan Correctional Center. Asserting the physician-patient privilege enunciated in 21 U.S.C. § 1175 which provides that "records of the identity, diagnosis or treatment of any patient" participating in a drug abuse program are confidential, Mr. Hopper has refused to consent to the revelation of his complete records as requested by the Government and has moved to quash the Subpoena Duces Tecum.

At the outset it is significant that Mr. Hopper is a probationer. As such, he is under the continuing jurisdiction of this Court. *United States v. Gerson*, 192 F.Supp. 864 (E.D.Tenn., 1961) aff'd 302 F.2d 430 (6th Cir., 1962). Probation is unquestionably a matter of grace rather than right and the granting of a period of probation rests within the sound discretion of the trial judge. *U. S. v. Hayward*, 471 F.2d 388 (7th Cir., 1972). In addition, broad latitude is given to a District Court in prescribing conditions of probation in order to further the general purposes of probation which are rehabilitation of the convicted person and protection of the public. *Porth v. Templar*, 453 F.2d 330 (10th Cir., 1971); 18 U.S.C.A. § 3651. With this in mind, this Court conditioned Mr. Hopper's probation upon his successful participation in a drug abuse program. There is no suggestion that imposition of this condition is in any way improper. Rather defendant argues that because this Court did not expressly order him, as

an added condition, to make his medical reports available to his probation officer, that such an order is now barred by § 1175. Even assuming that § 1175 can under certain circumstances act as a limitation upon this Court's supervisory authority over one of its probationers, there is nothing in the present case which would justify such a result.

It is true, as defendant argues, that Congress was gravely concerned with the success of drug abuse programs. In an attempt to assure success, Congress provided for the confidentiality of participating patients' records.

The strictest adherence to the provisions of 1175 is absolutely essential to the success of all drug abuse prevention programs. Every patient and former patient must be assured that his right to privacy will be protected. Without that assurance, fear of public disclosure of any drug abuse or of records that will attach for life will discourage thousands from seeking the treatment they must have if this tragic national problem is to be overcome. H.Conf.Rep.No.92–920, 92nd Cong., 2d Session.—(1972), reprinted in [1972] U.S.Code Cong. and Admin.News p. 2072; See, *United States v. Graham*, 548 F.2d 1302 (8th Cir., 1977).

Congress did, however, recognize that complete confidentiality was both unnecessary and perhaps counterproductive. With that in mind, Congress provided two limited exceptions to the confidentiality rule: If the patient himself gives written consent and when authorized by a court order.

■ The appropriateness of a court order requiring disclosure of the patient's records must be determined by balancing "the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services." 21 U.S.C. § 1175(b)(2)(C).

There is a paucity of case law in this area. Indeed, our research indicates that this issue has never been addressed in a reported case. Guidance, however, is provided by the regulations which state that when a prosecutorial agency makes an application to the court for an order permitting disclosure of patient records, all of the following criteria must be met:

(1) The crime was extremely serious, such as one involving kidnapping, homicide, assault with a deadly weapon, armed robbery, rape, or other acts causing or directly threatening loss of life or serious bodily injury, or was believed to have been committed on the premises of the program or against personnel of the program.

(2) There is a reasonable likelihood that the records in question will disclose material information or evidence of substantial value in connection with the investigation or prosecution.

(3) There is no other practicable way of obtaining the information or evidence.

(4) The actual or potential injury to the physician-patient relationship in the program affected and in other programs similarly situated, and the actual or potential harm to the ability of such programs to attract and retain patients, is outweighed by the public interest in authorizing the disclosure sought.

As to the first factor to be considered, there is no question that the crime in the present case is quite dissimilar to the violent crimes listed. However, this list of offenses is not exhaustive but is illustrative only and provides a general guide to the determination of whether the crime involved is serious. To say that distribution of heroin is not extremely serious is to ignore reality. While the maximum sentence provided by Congress for this offense is not dispositive, it does lend support to the proposition that Congress believed heroin distribution to be a very serious crime. Pursuant to 21 U.S.C. § 841(a)(1), Mr. Hopper could have been sentenced to fifteen years imprisonment, fined $25,000 and given a three-year mandatory special parole period. This court finds therefore that the crime involved in the present case is extremely serious in accordance with 42 CFR 2.65(c)(1).

■ There is no doubt that there exists a reasonable likelihood that the Northwestern Drug Program records will disclose material information of substantial value. Though revocation of probation is discretionary with the court, that discretion cannot be exercised arbitrarily. The Government has alleged facts which could lead to the revocation of Mr. Hopper's probation or the modification of its terms. However, the sporadic and infrequent urinalysis performed at the Metropolitan Correctional Center, and Mr. Hopper's termination from that program, make it impossible to determine whether Mr. Hopper consistently used heroin during the relevant period of probation or whether the Correctional Center test showed merely one fall from grace. This information is extremely important to this court as well as the Government and to the defendant. Without it, it would be unlikely that a full picture of what actually happened could be ascertained.

Defendant argues that because the Government has one urinalysis as well as those conducted by Northwestern during the same period, that the third criterion set out in the regulations cannot be met. This argument begs the question. Assuming that all the other criteria are met, the third criterion dictates that this court order disclosure only if it is the only practicable method for obtaining the information. The question which concerns this Court is the scope of Mr. Hopper's alleged heroin use. Only the Northwestern tests provide a continuous record of his drug activities. In the absence of his consent, and assuming all other criteria are met, this court finds that the only practicable way to obtain information as to the scope of Mr. Hopper's drug abuse is to order disclosure of the Northwestern records.

Finally, the need for the information must be balanced against the harm to the program which could be occasioned by court ordered disclosure. Because this case involves a probationer under the continuing jurisdiction of this court the question should be phrased somewhat differently: What is the balance between the potential harm to the drug abuse program and the potential harm to the probation objectives of rehabilitation and protection of the public?

■ Pursuant to both the statute and the regulations any order issuing from this court which could affect the confidentiality of Mr. Hopper's records will limit access of the records to this Court, the United States Attorney and the Probation Office to insure against unnecessary dissemination of the information. While lack of complete confidentiality could be said to discourage participation in such programs, a holding that an order was appropriate in the present case would be applicable only in those situations where participation was initiated by the court. This Court does not wish to undermine the efficacy of drug abuse programs. Neither, however, can it ignore its responsibility both to Mr. Hopper and the public. This Court has continuing supervisory authority over Mr. Hopper during the period of his probation, the effectiveness of which could be seriously hampered if important information pertaining to the conditions of probation is unavailable to the Court.

Accordingly, the defendant's motion to quash the subpoena served on the Northwestern Hospital Drug Abuse Program is denied. Further, it is ordered that Northwestern Hospital Drug Abuse Program comply with the Subpoena Duces Tecum by December 12, 1977.