THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v BOB SILKWORTH, Defendant.[1]

Criminal Court of the City of New York, New York County, February 21, 1989

### APPEARANCES OF COUNSEL

*Timothy McFarland* for New York City Department of Probation. *Robert M. Morgenthau, District Attorney (Neil Eisenstadt* of counsel), for Office of District Attorney. *George Dunn* for defendant. *Kelley Drye & Warren (Gretchen Walsh* of counsel), for Mary Immaculate Hospital.

1. Name used herein is fictitious for purposes of publication.

## OPINION OF THE COURT

MARCY L. KAHN, J.

This case of apparent first impression in this jurisdiction involves a clash of two socially important statutory schemes. The first of these is the body of laws of this State governing sentences of probation and imposing certain conditions upon persons serving such sentences, including the obligation to report to one's probation officer and, if required, to the court, on one's compliance with the terms of probation. (CPL art 410; Penal Law §§ 65.00, 65.10.) In direct conflict with these laws are the provisions of the Federal Drug Abuse Office and Treatment Act of 1972 (42 USC § 290ee-3 [the Act]), and the regulations thereunder (42 CFR 2.1 *et seq.* [the Regulations]), created to assure the confidentiality of persons participating in any Federally assisted drug or alcohol treatment program, which prohibit disclosure of any records relating to such treatment, absent the patient's consent.

Where a probationer is mandated by the court and his or her probation officer to attend a drug treatment program, but withholds his or her consent to the disclosure of pertinent treatment records, can the court order release of such records without violating Federal law? I conclude that it can.

### BACKGROUND OF THE CASE

Defendant was convicted by a plea of guilty to the class A misdemeanor of criminal trespass in the second degree (Penal Law § 140.15) and on October 20, 1986 was sentenced to three years' probation. On July 27, 1987 the New York City Department of Probation (Probation or the Department) advised the court that it had reasonable cause to believe that probationer had violated the conditions of his probation. A statement of specified alleged violations was thereupon filed with the court and the probationer was declared delinquent and notified to appear before the court. (CPL 410.50, 410.40.)

Probationer appeared in court on August 13, 1987. At that time, he was informed of the alleged violations, which included allegations that probationer failed to report to his probation officer commencing in April 1987; that he was arrested on class A misdemeanor charges in November 1986; that he was found guilty of the violation of trespass in February 1987; and that on two occasions in early 1987 his father had reported that probationer was using drugs, stealing from the home and exhibiting violent behavior toward other

family members. The matter was then adjourned for 60 days for an updated report from Probation.

Thereafter, further adjournments were ordered and on November 17, 1987 a probation violation hearing was scheduled to proceed. On that date, and subsequently, on January 20, 1988, the matter was further adjourned on consent to enable the defendant to report to T.A.S.C., a nonprofit agency which conducts assessment and referral services for probationers and others seeking to enter drug treatment programs. After missing two scheduled appointments with T.A.S.C., defendant was terminated from that program.

On April 11, 1988, when the Department again appeared in court ready for the probation violation hearing, defendant told the court that he had plans to enroll in a drug program and requested a postponement of the proceedings so that he could demonstrate his progress in the program to the court and to his probation officer. An adjournment was granted until May 24, 1988.

On May 24, defendant advised the court that he had been accepted for enrollment in the K.E.E.P. methadone maintenance program at Mary Immaculate Hospital (the Hospital), and probationer requested and received a further adjournment until July 5, 1988 for an update on his progress in that program.

On July 5, Probation informed the court that it had been informed by the Hospital that defendant had not reported to its K.E.E.P. program subsequent to May 11, 1988.[2] The Department thereafter filed an additional specification of Silkworth's violation of probation based upon his failure to participate in the Mary Immaculate Hospital K.E.E.P. program. The hearing on all violations was scheduled for July 11, 1988.

On July 6, at the request of Probation, the court issued a judicial subpoena duces tecum returnable at the hearing which required the Hospital to produce all records in its possession reflecting the attendance, participation, and termination of probationer in its K.E.E.P. program. Upon the Hospital's failure to respond to the subpoena, the Department

---

2. The Hospital's voluntary disclosure of this information is somewhat inconsistent with the position it has taken in these proceedings on the scope of the applicable regulations. (But see, State v White, 169 Conn 223, 363 A2d 143 [1975] [a drug counselor's direct observations of a patient's absence in violation of the terms of his probation, and a letter containing such observations, do not constitute a "record" under the Act and may be disclosed], and discussion infra.)

obtained an order compelling the Hospital to show cause why it should not be held in contempt for its failure to comply with the subpoena duces tecum.

The Hospital thereafter appeared in opposition to the Department's application and cross-moved to quash the subpoena on the ground that its compliance would violate the confidentiality provisions of the Act and the Regulations. The Department argued that it needs the records solely in the context of performing its official duties in supervising Silkworth's probation, and specifically as evidence in his probation violation hearing. Probationer also opposed the Department's application, urging that his rights to privacy under the Act and Regulations would be violated by the disclosure, and that disclosure would have a chilling effect on the willingness of persons such as himself to enter drug treatment facilities. During argument on both motions, the Hospital offered by way of compromise to furnish the Department and the court with a letter reflecting the dates of Mr. Silkworth's attendance, participation and termination in the K.E.E.P. program. *(See, State v White,* 169 Conn 223, 363 A2d 143, n 2, *supra.)* Probationer opposed even this compromise proposal.

## LEGAL ANALYSIS

The Department, correctly, takes the position that it is responsible for properly supervising the probationer's sentence and assuring that any violations of same are brought to the court's immediate attention. (9 NYCRR 352.1 *et seq.)* To perform its duty, the Department contends it must have access to the Hospital's records on probationer's participation in K.E.E.P.

By virtue of Mr. Silkworth's status as a probationer, he is in the legal custody of this court pending the expiration of the period of his sentence. (CPL 410.50 [1].) During this period, the Department of Probation has a continuing duty to supervise the probationer (CPL 410.50 [2]), and he, in turn, is required to comply with the terms of his probationary sentence. (Penal Law § 65.10.) The court is given broad discretion to modify or enlarge the conditions of a probationary sentence prior to its expiration. (Penal Law § 65.00 [2].)

In this case, once sentence was imposed, Mr. Silkworth was required to report to his probation officer on a regular basis and to answer all of the officer's reasonable inquiries. During the course of his probation, Mr. Silkworth was required to

participate in a drug treatment program, first through T.A.S.C., and then through the Mary Immaculate K.E.E.P. program. Without reaching the question, not now before the court, of whether or not Mr. Silkworth violated these requirements, it is indisputable that these conditions are proper conditions of a sentence of probation. (Penal Law § 65.10 [2] [e]; [3] [a], [c].)

It should be equally clear that the Legislature intended that information regarding a probationer's progress, or lack of it, in a drug treatment program to which he or she was sent pursuant to the sentencing court's direction should be readily available to the supervising probation officer and to the court. In fact, at the time the Legislature last amended Penal Law § 65.10 (2) (e), which authorizes a court to impose, as a condition of a sentence of probation or conditional discharge, participation in an alcohol or substance abuse treatment program, it also amended the provisions of Penal Law § 65.05 (2), the sentencing law relating to conditional discharges, to provide specifically that when such a requirement is imposed as part of a conditional discharge sentence, the court must require the administrator of the substance abuse program to provide written notice to the court of any violation of the program participation by the defendant. (L 1981, ch 742, § 2, eff Sept. 1, 1981.) Although no similar provision was enacted at that time amending the provisions of Penal Law § 65.00, the sentencing law relating to sentences of probation, the Legislature could very well have assumed that such a provision was unnecessary in light of the provisions of Penal Law § 65.10 (3) (c) requiring probationers to answer all reasonable inquiries by their probation officers. It is inconceivable that the Legislature intended to give probationers the right to withhold information relating to mandated drug treatment from their probation officers, particularly when that right was expressly denied to defendants serving sentences of conditional discharge.

The Hospital, quite properly, points out that the Act and the Regulations were adopted in order to maintain the confidentiality of the records of patients participating in drug treatment programs. The Act's legislative history demonstrates the intent of Congress to assure the privacy rights of patients undergoing drug treatment in order to enhance the success of the treatment program: "[T]he strictest adherence to the provisions of this section is absolutely essential to the success of all drug abuse prevention programs. Every patient and former patient must be assured that his right to privacy

will be protected. Without that assurance, fear of public disclosure of drug abuse or of records that will attach for life will discourage thousands from seeking the treatment they must have if this tragic national problem is to be overcome." (HR Conf Rep No. 92-920 on Pub L 92-255, 92nd Cong, 2d Sess [1972], reprinted in 1972 US Code Cong & Admin News 2072.)

To further these ends, the Act provides that records of the "identity, diagnosis, prognosis, or treatment" of any patient enrolled in a Federally assisted drug abuse prevention program shall be confidential and may be disclosed only under circumstances expressly authorized in the Act. (42 USC § 290ee-3 [a].) Thus, the confidentiality to be afforded such records is not absolute. *(United States v Hopper,* 440 F Supp 1208, 1210 [ND Ill 1977]; *People v Newman,* 32 NY2d 379, 388 [1973]; HR Conf Rep, *op. cit.,* at 2071-2072.)

To the extent relevant here, there are two types of circumstances in which disclosure may be made under the Act. The first is where the patient provides a prior written consent in the form prescribed by the Regulations. (42 USC § 290ee-3 [b] [1]; 42 CFR 2.31.) For example, the Regulations permit a drug program to disclose information about a patient to elements of the criminal justice system which have made participation in the program a condition of the disposition of a criminal proceeding against the patient, but only where the disclosure is limited to persons within the criminal justice system who have an official need for the information in connection with their duty to monitor the patient's progress, *and* only where the patient/probationer has executed a written consent to disclosure in a form prescribed by the Regulations. (42 CFR 2.35, 2.31.)[3] This provision would govern the instant situation, permitting release of the subpoenaed records without need for litigation, but for the fact that the probationer in this case has never signed the consent form. *(See,* 42 USC § 290ee-3 [b] [1].)

Although Congress must have intended probation officers and sentencing Judges to have access to treatment records in cases such as this one, the Regulations issued by the Secretary of Health and Human Services create an incongruous result

---

**3.** An example of the form of written consent prescribed by 42 CFR 2.31 appears as the Appendix to this opinion. Patients are generally requested, but not required, to execute such forms upon their arrival at treatment facilities. Owing to situations such as the present one, however, it may be a prudent practice for Judges to require execution of this form at the time of sentence, in the presence of counsel, where a defendant's sentence includes mandatory drug or alcohol treatment.

by requiring the probationer's consent as a precondition to disclosure, even in cases of mandated treatment. This effectively leaves the ultimate power of supervision in the hands of the person who is being supervised.

The second route to release of confidential treatment records is pursuant to court order, based upon a showing of "good cause". (42 USC § 290ee-3 [b] [2] [C].) In assessing good cause, the court must weigh the public interest and the need for disclosure against the injury to the patient, injury to the physician-patient relationship, and harm to the treatment services. (42 USC § 290ee-3 [b] [2] [C].) Any such order must contain appropriate safeguards against unauthorized disclosure. (42 USC § 290ee-3 [b] [2] [C].)

The Regulations set forth two sets of additional criteria for entry of a court order under this section, one relating to use of the records in civil proceedings (42 CFR 2.64) and one relating to criminal investigations and prosecutions based on such records (42 CFR 2.65). Although the Hospital argues that the applicable criteria are contained in the portion of the Regulations relating to disclosure and use of records to criminally investigate or prosecute patients (42 CFR 2.65), this assumption is incorrect.

The information is not being sought in order to criminally investigate or prosecute Mr. Silkworth, but solely for purposes of his previously scheduled probation revocation hearing. A violation of probation giving rise to revocation proceedings is not in itself a crime or offense as those terms are defined by the Penal Law. *(Matter of Darvin M. v Jacobs,* 69 NY2d 957, 959 [1987].) Moreover, probation violation hearings are not criminal actions or prosecutions. *(Gagnon v Scarpelli,* 411 US 778, 782, 789 [1973]; *Matter of Darvin M. v Jacobs,* 69 NY2d, at 959; *People v Tyrrell,* 101 AD2d 946 [3d Dept 1984].) The purpose of the proceeding is to determine whether the probationer's "subsequent acts violate the conditions of the original sentence not whether the acts constitute a crime." *(Matter of Darvin M. v Jacobs,* 69 NY2d, at 959.) The proceedings are summary in nature, conducted without a jury, and a finding of a violation and an order revoking probation need only be based upon a preponderance of the evidence, not proof beyond a reasonable doubt. *(People v Hemphill,* 120 AD2d 767 [3d Dept 1986], *lv denied* 68 NY2d 668 [1986]; *People v Crandall,* 51 AD2d 841 [3d Dept 1976]; CPL 410.70.)

That probation revocation proceedings could not have been

contemplated by Congress or the Secretary as being included within the rubric of section 2.65's "criminal investigation[s] or prosecution[s]" is further demonstrated by the distinction drawn by the United States Supreme Court between such proceedings and criminal actions in *Gagnon v Scarpelli (supra,* at 789): "[W]e deal here, not with the right of an accused to counsel in a criminal prosecution, but with the more limited due process right of one who is a probationer or parolee only because he has been convicted of a crime."

Accordingly, under the circumstances here presented, the provisions of 42 CFR 2.65 are inapplicable, and the criteria set forth in section 2.64 will govern the court's determination of good cause.

That section of the Regulations requires that a finding of good cause be based on the following two criteria being met:

(1) Other ways of obtaining the information are not available or would not be effective; and

(2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

As to the first requirement, it seems clear that without information from the Hospital, the Department will not be able to obtain the necessary information it needs to complete its legally mandated investigation and report to the court on probationer's status. Because the statute places the burden of proof on the Department to prove by a preponderance that probationer has violated the terms of his probation, it is only reasonable to permit the Department the limited access it needs to such information to sustain its burden. Although the letter offered by the Hospital might be satisfactory for purposes of the hearing, the information needed by the Department and the court for purposes of probationer's continued supervision or resentencing may well exceed that provided in such a letter. As explained by Justice Frankfurter's discussion of the purpose of probation in his dissenting opinion in *Roberts v United States:* "The device of probation grew out of a realization that to make the punishment fit the criminal requires wisdom seldom available immediately after conviction. * * * Thus the probation system is in effect a reliance on the future to reveal treatment appropriate to the probationer. In the nature of things, knowledge which may thus be gained is not generally available when the moment for conventional sentencing arrives. Since assessment of an appropriate punish-

ment immediately upon conviction becomes very largely a judgment based on speculation, the function of probation is to supplant such a speculative judgment by judgment based on experience." (320 US 264, 273, quoted in *People v Gilmore,* 63 AD2d 45, 48-49 [2d Dept 1978].) If Mr. Silkworth's probationary sentence is to benefit from the experiential judgment referenced by Justice Frankfurter, it seems clear that the records in question must be disclosed to the Department and the court.

Turning now to the Regulations' second requirement for a showing of good cause, which also embodies the Act's requirement, the public's interest in having persons convicted of crimes satisfactorily complete the sentences imposed on them is substantial. If Mr. Silkworth has evaded serving his sentence for the past 17 months, the public is entitled to have him brought to justice without further delay. This is not a case in which the records are being sought merely in aid of private civil litigation. *(Cf., Matter of Commissioner of Social Servs. v David R. S.,* 55 NY2d 588 [1982].) Rather, disclosure is sought to permit enhanced supervision by the Department and the court, including possible revocation of the probationary sentence which Mr. Silkworth is now ostensibly serving. *(Cf., Matter of Alonzo M. v New York City Dept. of Probation,* 72 NY2d 662, 668 [1988] [noting that Probation was permitted access to records sealed pursuant to CPL 160.50 for supervisory purposes, including probation revocation proceedings, but that the presumption of innocence would be contravened if the Department could use such information as the basis for sanction enhancement in a wholly unrelated proceeding].)

In addition, the potential injury to probationer is small, given that the information will be released not to the general public but only to the extent needed to permit Probation to do its job. Greater injury could result to Mr. Silkworth were disclosure of the records to be denied, since the court and Probation would lack complete information about his status and would be hampered in any continuation of his supervision. The harm potentially resulting to the physician-patient relationship and to the treatment services does not outweigh the need for disclosure where, as here, the patient has apparently discontinued treatment against medical advice.

Moreover, under the circumstances presented in this case, which include the fact that participation in the drug program was initially mandated by the Department of Probation and the court, as well as the fact that probationer sought to

postpone his probation violation hearing by voluntarily enrolling in a methadone maintenance program and promising to provide the court and Probation with a report on his progress, the limited disclosure of the probationer's records being sought here cannot be said to discourage participation in drug programs. *(See, United States v Hopper,* 440 F Supp 1208, *supra.)*

For the foregoing reasons, it is ordered that respondent Mary Immaculate Hospital is to comply with the judicial subpoena duces tecum issued by this court on July 6, 1988 and produce for in camera inspection by the court any and all records reflecting attendance, participation, and termination of the probationer in the Mary Immaculate Hospital K.E.E.P. program, all copies to be certified. The court will review the documents and will order withheld from production any records which do not relate to the probationer's attendance, participation or termination in the program or which are not necessary for use by the Department of Probation in performance of its official responsibilities in supervising defendant's probation and in the conduct of the pending probation violation hearing on the previously filed specifications. The balance of the records will be made available to the Department of Probation, counsel for the probationer, the court, and, should it indicate an interest in reviewing the records in connection with the violation of probation proceeding, the Office of the District Attorney. Disclosure of these records will be limited to persons within the Department of Probation, the District Attorney's office, counsel for the probationer and the court, and will be made only to the extent that such persons have a need for such information in conjunction with the performance of their official duties. Any party receiving such records will take appropriate steps to insure against their unnecessary dissemination.

## APPENDIX[4]

### NEW YORK CITY CRIMINAL COURT

Consent To Disclosure Of Confidential Information

Regarding Drug Or Alcohol Treatment

(42 C.F.R.)

I, _____, hereby consent to the unrestricted exchange of
     (name)

information between _____

and _____

(Judge/Court, Probation/Parole, other referring agency)

The purpose of and need for the disclosure is to inform the Criminal Justice System agency/ies listed above of my attendance and progress in treatment. The extent of the information to be disclosed is my diagnosis, treatment, attendance, participation and termination from treatment; my cooperation and progress, or lack thereof in the program/s to which I am referred; and facts or recommendations regarding the conditions of my sentence and/or referral for treatment, including information which may affect my sentence or result in modification of the terms of my sentence and/or the terms of my participation in the treatment program/s, including urinalysis testing.

I understand that this consent will remain in effect and cannot be revoked by me until:

_____ There has been a formal and effective termination or revocation of my probation, parole, conditional release/discharge or other proceeding under which I was mandated to receive treatment; or

_____

(other time or event when consent can be revoked)

_____

(other expiration of consent)

I also understand that any disclosure made is governed by Part 2 of Title 42 of the Code of Federal Regulations governing confidentiality of alcohol and drug treatment records, and that recipients of this information may redisclose it only in connection with their official duties in connection with the terms of my sentence and/or mandated treatment.

_____      _____
Signature of defendant/client       Date signed

_____      _____
Signature of witness       Date signed

_____      _____
Signature of guardian       Date signed

4.   The form set forth in this Appendix is adapted from one being used by Project Return Foundation, whose cooperation and assistance are gratefully acknowledged.