23672

STATE BOARD OF MEDICAL EXAMINERS, Appellant v. FENWICK
HALL, INC., Respondent. In re ANONYMOUS.

(419 S.E. (2d) 222)

Supreme Court

*Asst. Atty. Gen. Richard P. Wilson, A. Camden Lewis,
Cameron B. Littlejohn, Jr.* and *Pete Kulmala,* all of *Lewis,
Babcock & Hawkins,* Columbia, *for appellant.*

*John E. Parker, III,* of *Peters, Murdaugh, Parker, Eltzroth
& Detrick,* Hampton, and *Capers G. Barr III,* of *Barr, Barr &
McIntosh,* Charleston, *for respondents.*

Submitted March 24, 1992.

Decided June 8, 1992.

MOORE, Justice:

The issue on appeal is whether the trial judge erred in denying the petition of the State Board of Medical Examiners for disclosure of anonymous doctor's medical records. We reverse.

## FACTS

On May 24, 1988, an initial complaint was filed against an anonymous doctor (Doctor) with the State Board of Medical Examiners (Board). The board held a confidential initial investigation and discovered that the Doctor had been treated for substance abuse at Fenwick Hall in April of 1988.

The initial complaint was based on the alleged misconduct of the Doctor in treating a patient who had been injured in an automobile accident on January 11, 1988. The patient subsequently died on January 14th and his estate filed survival and wrongful death actions against the Doctor.

The Doctor fractured his knee on December 15, 1987, and took a six-month leave of absence from the hospital. During this time, however, the Doctor continued to see patients in his office. During March of 1988, the Doctor was prescribed a painkiller which he testified he only took on weekends. The Doctor testified that he had been previously treated for alcohol and substance abuse "a number of times." The Doctor testified that because he wanted to be completely free of all drugs before returning to work at the hospital, he entered Fenwick Hall in April, 1988.

The typical treatment at Fenwick Hall is thirty (30) days. Both the Doctor and his wife testified that he stayed at Fenwick Hall the full thirty (30) days and completed treatment. The Board, however, alleges that the Doctor left after five (5) days against medical advice. The Board filed a petition for disclosure of the Doctor's records pursuant to 42 U.S.C. § 290ee-3(c). The trial judge denied the petition and the Board is now appealing this denial.

## DISCUSSION

Fenwick Hall receives federal funds and is thereby subject to the confidentiality provisions of 42 U.S.C. § 290ee-3 (1991) and 42 C.F.R. 2.64 (1991). The applica-

ble portion of § 290ee-3 states that patient records maintained in conjunction with drug abuse programs may be disclosed:

> (b)(2)(C) If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

42 C.F.R. § 2.64(d) lists the criteria for the entry of a court order allowing disclosure of records for noncriminal purposes:

> An order under this section may be entered only if the court determines that good cause exists. To make this determination the court must find that:
> (1) Other ways of obtaining the information are not available or would not be effective; and
> (2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship, and the treatment services.

The Board argues that other ways of obtaining the information are not available or would not be effective. Fenwick Hall argues that the information is available without disclosure of the medical records. Fenwick Hall, however, does not state any other way for the Board to obtain the information.

42 C.F.R. § 2.65 (1991) lists the criteria for disclosure of medical records for the criminal investigation of patients. This regulation includes the identical requirement that other ways of obtaining the information are unavailable or would not be effective. In *United States v. Hopper*, 440 F. Supp. 1208 (N.D. Ill. 1977), a defendant was placed on probation and ordered to participate in a drug abuse program. The government in attempting to revoke the defendant's probation sought disclosure of his medical records. The court stated that "[t]he question which concerns this court is the scope of Mr. Hopper's alleged heroin use. Only the Northwestern tests provide a continuous record of his drug activities. . . . The only practi-

cable way to obtain information as to the scope of Mr. Hopper's drug abuse is to order disclosure of the Northwestern records." *Id.* at 1211. Although in the context of a criminal investigation, we think that the analysis for this particular criterium would be the same in a noncriminal proceeding.

Under the facts before us, we find that there is no other way for the Board to obtain the information. Information drawn by casual observations of the Doctor would not be an acceptable equivalent to the information the Board could obtain from the Doctor's records. As in *Hopper*, the only practicable way to obtain the information of the Doctor's drug abuse is through disclosure.

Next we must decide whether the public interest and need for disclosure outweigh the potential injury to the Doctor, the physician-patient relationship and treatment services. Fenwick Hall argues that any suggestion that there exists a threat to life or serious bodily injury is non-specific and speculative. The Board, however, argues that it is virtually impossible to conceive of a situation which would pose a greater threat to life or serious bodily harm than a physician practicing under the influence of drugs. We agree. It is imperative that there be no impediments which could cloud a physician's judgment. Therefore, we conclude that the public interest and need for disclosure is great. We now must determine if this need outweighs the potential injury to the patient, physician-patient relationship and the treatment services.

Clearly, the intent behind the federal statute and regulations is to protect the right to privacy in order to encourage treatment for substance abuse. Fenwick Hall argues that a physician who has sought help for substance abuse is less dangerous than an impaired physician who seeks no help for fear of disclosure. While this may be true, we think that a physician who has successfully been treated for substance abuse should not fear disclosure to the Board. The Board in conducting its investigation would retain the confidentiality of the records. The potential harm to the physician, the physician-patient relationship, and the treatment services does not outweigh the need for disclosure where the patient is practicing medicine and the disclosure is to be made to the Board for a confidential investigation. The

records are essential to the Board's investigation of the Doctor and its determination of the Doctor's fitness to practice medicine.

Accordingly, we reverse and remand for the trial court to issue an order authorizing disclosure of the Doctor's records with the imposition of appropriate safeguards against unauthorized disclosure. Based on the foregoing, we need not address the Board's remaining arguments.

Reversed and Remanded.

HARWELL, C.J., and CHANDLER, FINNEY and TOAL, JJ., concur.