## IN RE MARVIN M. ET AL.*
## (AC 16942)

Landau, Spear and Daly, Js.

*In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book (1998 Rev.) § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued November 7, 1997—officially released May 5, 1998

*Anthony A. Wallace*, with whom, on the brief, was *Douglas G. Lilly*, for the appellants (respondents).

*Stephen G. Vitelli*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (petitioner).

*Wiley B. Rutledge*, for the minor children.

*Opinion*

LANDAU, J. The respondents appeal from the judgment of the trial court terminating their parental rights as to their children, Marvin and David. On appeal, the respondents claim that the trial court improperly (1) granted the motion by the petitioner, the department

of children and families (department), to disclose the respondents' medical records from substance abuse treatment facilities and psychiatric treatment facilities, and permitted subsequent testimony with regard to such records in violation of 42 U.S.C. § 290dd-2 and its applicable regulations, and in violation of General Statutes § 52-146 et seq., the fifth amendment to the United States constitution, article first, § 8, of the constitution of Connecticut and Practice Book (1998 Rev.) § 34-1, formerly § 1048.1, (2) found that the respondents had failed to achieve rehabilitation pursuant to General Statutes (Rev. to 1995) § 17a-112 (b) (2),[1] (3) applied the "best interest of the child" standard of § 17a-112 (b), (4) found that there was clear and convincing evidence that parental rights should be terminated pursuant to § 17a-112 (b), and (5) reviewed the evidence under the "clear and convincing evidence" standard, rather than the "beyond a reasonable doubt" standard. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the disposition of this appeal. Marvin was born in 1988, and David, who tested positive for cocaine at birth in a toxicology screen, was born in 1989. The children were referred to the department after being hospitalized briefly on several occasions from exposure to lead in their home. The department filed the first petition of neglect with respect to the children on

---

[1] General Statutes (Rev. to 1995) § 17a-112 (b) provides in relevant part: "The superior court upon hearing and notice . . . may grant [a termination] petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that . . . with respect to any nonconsenting parent, over an extended period of time, which . . . shall not be less than one year . . . (2) the parent of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

August 28, 1991, alleging that the respondents failed to protect them from lead exposure, failed to bring them to their medical appointments and refused supportive services from the department. The trial court ordered that the children be placed in the temporary custody of the department. One month later, revocation of commitment was granted to the respondent mother because the respondents had moved from the hazardous environment and had been receiving supportive services from the department.

On September 5, 1991, the respondents had another child, who was also born with a positive toxicity to cocaine. On February 18, 1992, that child died a "sudden and unexpected death in infancy associated with systemic cocaine exposure," according to the chief medical examiner's report. As a result, the department obtained an order of temporary custody for Marvin and David, and, on February 28, 1992, the department placed the children in foster care where they have remained.

On April 9, 1992, the respondents agreed to comply with the following court expectations: refraining from further substance abuse, participating in counseling for, inter alia, drug and alcohol treatment, following recommendations of drug evaluations, visiting the children as often as the department permits, keeping all appointments with the department and apprising the department of their whereabouts. The respondents, however, tested positive for cocaine toxicity on several occasions, failed to comply with treatment programs, failed to comply with parenting training and failed to keep appointments with the department. On July 2, 1992, Marvin and David were adjudicated neglected because they were denied proper care and attention from the respondents.

In September, 1994, the respondent mother gave birth to another child, who also tested positive for cocaine

at birth. The respondent father was arrested twice in 1995 on drug related charges. A rearrest warrant was issued against him for failure to appear in court. The respondent mother had an outstanding warrant issued against her because she failed to appear in court on a criminal charge of disorderly conduct. Both parents have tested positive for the presence of cocaine on several occasions and as recently as August, 1996.

On June 30, 1995, the department filed petitions to terminate the respondents' parental rights. The original petitions alleged all statutory grounds contained in § 17a-112 (b), however, on December 4, 1996, the department filed an amended petition withdrawing all of the statutory grounds except for failure to rehabilitate pursuant to § 17a-112 (b) (2). See footnote 1. On August 30, 1996, the department filed motions for orders to disclose the medical records of alcohol and substance abuse treatment facilities and psychiatric and psychological treatment facilities, and to permit the testimony of the pertinent service providers from the facilities. On September 26, 1996, the respondents filed an objection to the department's motion. On November 13, 1996, the trial court ordered the relevant facilities to disclose the medical records for an in camera review by the court. On November 27, 1996, the trial court issued findings following its in camera review of the records, which excepted intake records, discharge records, attendance records, drug screen test results and records indicating compliance and noncompliance with treatment programs from the statutory privilege.

The trial court heard testimony from seven witnesses at trial and received into evidence over thirty documents, including evaluations, social studies, police records and treatment plans. On December 18, 1996, the trial court terminated the respondents' parental rights as to Marvin and David because "[s]ince the adjudication of neglect, the parents have failed to achieve

such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the [children], that they could assume a responsible position in the [lives of the children] in violation of General Statutes [Rev. to 1995] § 17a-112 (b) (2)."

I

The respondents first claim that the trial court improperly granted the department's motion to disclose the respondents' medical records from substance abuse treatment facilities and psychiatric treatment facilities, and permitted subsequent testimony with regard to such records in violation of 42 U.S.C. § 290dd-2 and its applicable regulations,[2] and § 52-146 et seq.[3]

A

Section 290dd-2 (a) of title 42 of the United States Code provides that "[r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or

---

[2] See 42 C.F.R. §§ 2.1 through 2.67.

[3] The respondents also claim that the disclosure of their records violated the provisions of the fifth amendment to the United States constitution, article first, § 8, of the Connecticut constitution and Practice Book (1998 Rev.) § 34-1, formerly § 1048.1, by concluding that the release of the records constituted an "inherent admission into evidence," violating their right to remain silent. "We are not required to review issues that have been improperly presented to this court through an inadequate brief." *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 44–45, 699 A.2d 101 (1997). "Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Cummings* v. *Twin Tool Mfg. Co.*, 40 Conn. App. 36, 45, 668 A.2d 1346 (1996). The respondents have merely concluded that their rights were violated and have failed to provide us with any substantive discussion or citation of authorities. As a result, we decline to review this claim.

indirectly assisted by any department or agency of the United States shall . . . be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b)." Our legislature has addressed the issue of confidentiality by protecting records, the disclosure of which "would constitute a violation of federal statutes concerning confidentiality of alcohol or drug patient records and any regulations pursuant thereto . . . ." General Statutes § 17a-688 (c) (formerly § 19a-126h).

The Congressional Conference Report states, concerning the predecessor to § 290dd-2, that "the strictest adherence to the provisions of this section is absolutely essential to the success of all drug abuse prevention programs. Every patient and former patient must be assured that his right to privacy will be protected. Without that assurance, fear of public disclosure of drug abuse or of records that will attach for life will discourage thousands from seeking the treatment they must have if this tragic national problem is to be overcome." H.R. Rep. No. 775, 92d Cong., 2d Sess., 33, reprinted in 1972 U.S.C.C.A.N. 2072.

While nondisclosure is the general rule, exceptions do exist. Subsection (b) (2) (C) permits disclosure of such records without the consent of the patient "[i]f authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm.[4] In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in

---

[4] Two additional exceptions, which are not applicable here, exist when there is a medical emergency or when disclosure is for the purpose of research, audits or evaluations. See 42 U.S.C. § 290dd-2 (b) (2) (A) and (B).

determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure." 42 U.S.C. § 290dd-2 (b) (2) (C).[5] The statute grants the secretary of health and human services wide latitude to make regulations that "carry out the purposes of this section. Such regulations may contain such definitions, and may provide for such safeguards and procedures, including procedures and criteria for the issuance and scope of orders under subsection (b) (2) (C) . . . ." 42 U.S.C. § 290dd-2 (g).

To determine which regulations apply, it is necessary, as a threshold matter, to determine whether the records[6]

---

[5] "The Drug Abuse Office and Treatment Act of 1972, from which the record-confidentiality provisions of § 290dd-2 derive, had as its purpose 'to bring about the most effective deployment of Federal resources against the devastating growth of drug abuse in the United States.' H.R. Rep. No. 92-775, 92d Cong., 2d Sess. (1972), reprinted in 1972 U.S.C.C.A.N. 2045, 2045." *Ohta* v. *Muraski*, 1993 WL 366525 *14 (D. Conn. 1993). "In 1992, the Alcohol, Drug Abuse and Mental Health Administration was reorganized, and the confidentiality provisions for drug [formerly 42 U.S.C. § 290ee-3] and alcohol [formerly 42 U.S.C. § 290dd-3] abuse programs were combined into the present Section 290dd-2. . . . [T]he thrust of this reorganization was solely administrative; the effort was 'an attempt to strengthen the federal effort to combat drug abuse, alcohol abuse and mental illness.' S. Rep. No. 102-131, 102d Cong., 2d Sess. 2-3 (1992), reprinted in 1992 U.S.C.C.A.N. 277, 278-79; *Ohta* [v. *Muraski,* supra,] 1993 WL 366525, at *15." *Ellison* v. *Cocke County,* 63 F.3d 467, 471 (6th Cir. 1995).

[6] The statute refers to "[r]ecords"; 42 U.S.C. § 290dd-2 (a); the "content of any record"; 42 U.S.C. § 290dd-2 (b) (1); and "the content of such record"; 42 U.S.C. § 290dd-2 (b) (2); and the regulations define "records" as "any information, whether recorded or not . . . ." 42 C.F.R. § 2.11. "Thus, Congress has expressly safeguarded not just records about substance abuse, but the *contents* of records about substance abuse." (Emphasis in original.) *Carr* v. *Allegheny Health, Education & Research Foundation,* 933 F. Sup. 485, 488 (W.D. Pa. 1996). We acknowledge that "it [is] difficult to square the statutory term 'record' with a regulatory definition that includes information 'whether recorded or not.' 42 C.F.R. § 2.11. Information not recorded would seem to consist of mental processes. While such information undoubtedly may be acquired, stored, processed, and transmitted without taking tangible form, we doubt that such information can rightly be called a 'record,' and therefore be consistent with the term Congress itself uses in the statute. See also Black's Law Dictionary (6th ed. 1990) at 1273 (all definitions refer

contain "confidential communications."[7] Although this determination has never been made by this court,[8] case law from other jurisdictions on the subject supports the view that courts must distinguish, as a threshold matter, between confidential and nonconfidential communications. See *In re August, 1993 Regular Grand Jury*, 854 F. Sup. 1380 (S.D. Ind. 1994); *Jane H.* v. *Rothe*, 488 N.W.2d 879 (N.D. 1992); *In re B.S.*, 163 Vt. 445, 659 A.2d 1137 (1995); cf. *Smalls* v. *Fallon*, 1995 WL 5847 (S.D.N.Y. 1995) (concluding that 42 C.F.R. §§ 2.63 and 2.64 should be read together). In addition, several other cases impliedly support this view by analyzing § 2.64 without analyzing § 2.63. Such analyses suggest that records containing nonconfidential communications need satisfy only the "good cause" test set out in the statute and defined in § 2.64. See *State* v. *Rollinson*, 203 Conn. 641, 526 A.2d 1283 (1987) (analyzing 42 C.F.R. § 2.65, the equivalent of § 2.64, dealing with criminal investigations); *People* v. *Silkworth*, 142 Misc. 2d 752, 538 N.Y.S.2d 692 (N.Y. City Crim. Ct. 1989); *Doe* v. *Daviess County Division of Children & Family Services*, 669 N.E.2d 192 (Ind. App. 1996).

Section 2.63 (a) of title 42 of the Code of Federal Regulations provides: "A court order under these regu-

---

to tangible things)." *Carr* v. *Allegheny Health, Education & Research Foundation*, supra, 487 n.3. Because there is no claim by either party that the information sought are not "records" within the meaning of the statute, we will assume that they are.

[7] There appears to have been some confusion in the trial court as to whether 42 C.F.R. § 2.63 or § 2.64 applied to the present case. In the transcript, the trial court referenced the proper regulation, 42 C.F.R. § 2.64, but referred to language from § 2.63. In the court order, however, the court properly referenced § 2.64.

[8] This court has analyzed 42 U.S.C. § 290dd-3, the predecessor to 42 U.S.C. § 290dd-2. *In re Romance M.*, 30 Conn. App. 839, 849, 622 A.2d 1047 (1993), appeal dismissed, 229 Conn. 345, 641 A.2d 378 (1994). In *In re Romance M.*, this court permitted disclosure of a confidential communication because there was good cause and an exception from 42 C.F.R. § 2.63 applied. Id., 850–53. This court did not, however, conclude that records must be categorized as either confidential or nonconfidential communications. Id.

lations may authorize disclosure of *confidential communications made by a patient to a program* in the course of diagnosis, treatment, or referral for treatment only if: (1) The disclosure is necessary to protect against an existing threat to life or of serious bodily injury . . . (2) The disclosure is necessary in connection with the investigation or prosecution of an extremely serious crime . . . or (3) The disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of the confidential communications." (Emphasis added.)

Prior to an amendment in 1987, § 2.63 provided that an order requiring disclosure of confidential information "may not extend to communications by a patient to personnel of the program, but shall be limited to the facts or dates of enrollment, discharge, attendance, medication, and similar objective data . . . ." 42 C.F.R. § 2.63 (amended 1987).[9] The subsequent amendment phrased the regulations in terms of when confidential communications can be disclosed. *In re August, 1993 Regular Grand Jury*, supra, 854 F. Sup. 1384.

"Distinguishing between confidential communications and other information . . . still has a significant effect: Ordinary, run-of-the-mill objective data (i.e. not confidential communications) is disclosable if the Government meets the 'good cause' test established in § 290dd-2 (b) (2) (C); confidential communications, on the other hand, are disclosed only if the 'good cause' test is met *and* one of the three express circumstances of disclosure outlined in § 2.63 (a) is also established." (Emphasis in original.) Id.

---

[9] This regulation also contained an exception for "[w]hen a patient in litigation offers testimony or other evidence pertaining to the content of his communications with a program . . . ." 42 C.F.R. § 2.63 (b) (amended 1987). This exception exists in the present § 2.63.

Section 2.64 (d) of title 42 of the Code of Federal Regulations defines the "good cause" standard as set out in § 290dd-2 (b) (2) (C). To determine whether "good cause" exists, the court must find that: "(1) Other ways of obtaining the information are not available or would not be effective; and (2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services." 42 C.F.R. § 2.64 (d).

In this case, the department sought disclosure of records that would show that the respondents had not stopped using drugs. Disclosure of communications made by the respondents to any substance abuse program was not necessary to prove that they had not stopped using drugs and, therefore, only the good cause standard of § 2.64 is applicable in this case. The trial court, *Foley, J.*, ordered that in accordance with § 2.64, there was good cause to disclose the respondents' records and further ordered that the records should be sent under seal to be reviewed by the court in camera.[10] The trial court, *Dyer, J.*, conducted the in camera review and, pursuant to § 2.64, released from statutory privilege only "intake records, discharge records, attendance records, results of drug screen tests, and records that indicated compliance/noncompliance with treatment programs suggested to facilitate their rehabilitation and reunification. The records selected by the

---

[10] Section 2.64 of title 42 of the Code of Federal Regulations provides in relevant part: "(c) *Review of evidence: Conduct of hearing.* Any . . . review of evidence, or hearing on the application must be held in the judge's chambers or in some manner which ensures that patient identifying information is not disclosed to anyone other than a party to the proceeding, the patient, or the person holding the record . . . .

"(e) *Content of order.* An order authorizing a disclosure must: (1) Limit disclosure to those parts of the patient's record which are essential to fulfill the objective of the order; (2) Limit disclosure to those persons whose need for information is the basis for the order; and (3) Include such other measures as are necessary to limit disclosure for the protection of the patient, the physician-patient relationship and the treatment services . . . ." (Emphasis in original.)

undersigned related to treatment that each respondent received between the date of commitment and the date when the [termination] petitions were filed."

The respondents make two claims of impropriety. First, they claim that there was another way of obtaining the information effectively, namely, through the testimony of the various social workers who received information from the respondents through their attempts to reunify the parents and children. See 42 C.F.R. § 2.64 (d) (1). Second, they claim that "no notice was given to the holder of the records, [pursuant to § 2.64 (b)[11]] nor did they appear at the motion hearing, allowing them a chance to protect the privilege."[12]

Our Supreme Court has analyzed 42 U.S.C. § 290dd-3, the predecessor to 42 U.S.C. § 290dd-2, and the applicable regulations. *State* v. *Rollinson*, supra, 203 Conn.

---

[11] Section 2.64 of title 42 of the Code of Federal Regulations provides in relevant part: "(b) *Notice*. The patient and the person holding the records from whom disclosure is sought must be given: (1) Adequate notice in a manner which will not disclose patient identifying information to other persons: and (2) An opportunity to file a written response to the application, or to appear in person, for the limited purpose of providing evidence on the statutory and regulatory criteria for the issuance of the court order. . . ." (Emphasis in original.)

[12] The respondents do not claim that they were not given proper notice, rather, they claim that the programs were not given proper notice. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action . . . . *Ardmare Construction Co.* v. *Freedman*, 191 Conn. 497, 501, 467 A.2d 674 (1983). . . . *Tomlinson* v. *Board of Education*, 226 Conn. 704, 717, 629 A.2d 333 (1993). Standing focuses on whether the party initiating the action is the proper party to request adjudication of the issues. *Nye* v. *Marcus*, 198 Conn. 138, 141, 502 A.2d 869 (1985). In general, a party does not have standing to raise rights belonging to another. *Third Taxing District* v. *Lyons*, 35 Conn. App. 795, 798, 647 A.2d 32, cert. denied, 231 Conn. 936, 650 A.2d 173 (1994). [T]he concept of standing is a practical and functional one designed to ensure that only those parties with a substantial and legitimate interest can appeal an order. *Primerica* v. *Planning & Zoning Commission*, 211 Conn. 85, 93, 558 A.2d 646 (1989)." (Internal quotation marks omitted.) *Stamford Hospital* v. *Vega*, 236 Conn. 646, 657, 674 A.2d 821 (1996). There-

641. The court held that "[t]he privilege which the defendant seeks to attach to his statements at the detoxification unit is a statutory privilege and not a constitutional one. Under the circumstances, the scope of our review of the ruling of the trial court is limited. . . . [W]e reverse such a decision 'only where abuse of discretion is manifest or where an injustice appears to have been done.' " Id., 656. Applying this standard to the present case, we cannot say that the trial court abused its discretion in disclosing the respondents' records.

The respondents argue that the records were improperly disclosed because various social workers could have testified to "statements" made to them "in their course of working with [the respondents] to solve their problems in an attempt at reunification of the parents and children." As we have stated, however, only facts evidencing the respondents' continued addiction to drugs were disclosed, not their statements.[13] It is unlikely that these social workers would remember how often the respondents were tested for drug use, on what dates they tested positively and on what dates they left the substance abuse programs prematurely. The regulation provides that disclosure is proper if "[o]ther ways of obtaining the information are not available *or would not be effective* . . . ." (Emphasis added.) 42 C.F.R. § 2.64 (d) (1). Relying on substance abuse treatment providers to recall such detailed information about patients would not be effective. See *In re August, 1993 Regular Grand Jury,* supra, 854 F. Sup. 1386 (testimony not acceptable equivalent because detail and

fore, we decline to review this claim because the respondents have no standing to assert the rights of the "holder" of the record.

[13] Peter Medina from the A.P.T. Foundation was the only witness from a substance abuse program to testify; however, Medina testified only to lay a foundation for the records. Counsel for all parties then agreed to admit all of the records because they were self-explanatory. Again, no communications made to Medina or the program were revealed by him.

accuracy necessary); *State Board of Medical Examiners* v. *Fenwick Hall, Inc.*, 308 S.C. 477, 480, 419 S.E.2d 222 (1992) (information from observers not acceptable equivalent to records). Therefore, the trial court did not abuse its discretion in ordering disclosure of a limited amount of information contained in the respondents' records.

### B

The respondents also argue that the trial court improperly disclosed their confidential records in violation of § 52-146 et seq. We first note that our legislature has expressly addressed the issue of confidentiality of records by protecting records whose disclosure "would constitute a violation of federal statutes concerning confidentiality of alcohol or drug patient records and any regulations pursuant thereto . . . ." General Statutes § 17a-688 (c). As we held previously, the trial court did not violate the federal statute or regulations. The respondents also argue, however, that a court-ordered psychological evaluation that was admitted into evidence should have remained confidential.

Section 52-146c, titled "Privileged communications between psychologist and patient," provides in subsection (c) that the "[c]onsent of the person shall not be required for the disclosure of such person's communications: (1) If a judge finds that any person after having been informed that the communications would not be privileged, has made the communications to a psychologist in the course of a psychological examination ordered by the court . . . ." In the present case, the court ordered the psychological evaluation, which was performed by David Mantell, a clinical psychologist. Mantell's report stated that the respondents were told in advance that the report would be admissible. Therefore, the trial court properly admitted Mantell's report.

## II

The respondents' next three claims involve challenges to the factual findings of the trial court. They argue that the trial court improperly found that they had failed to achieve rehabilitation pursuant to § 17a-112 (b) (2),[14] applied the "best interest of the child" standard of § 17a-112 (b), and found that there was clear and convincing evidence that parental rights should be terminated pursuant to § 17a-112. We disagree.

A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. *In re Tabitha P.*, 39 Conn. App. 353, 360, 664 A.2d 1168 (1995). "In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." Id.

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's

---

[14] The respondents also argue that § 17a-112 was amended, which changed failure to achieve rehabilitation as a ground for termination by further requiring that the child be under the age of seven and that the parent's parental rights as to another child were previously terminated. This argument lacks merit because § 17a-112 was not amended substantively. Failure to achieve rehabilitation was simply renumbered as § 17a-112 (c) (3) (B). The subsection referred to by the respondents requiring that the child be under the age of seven and that the parent's rights were previously terminated is the present § 17a-112 (c) (3) (E).

ruling. . . . 'Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . Our Supreme Court has held that General Statutes (Rev. to 1989) § 17-43a (b) (2) [the predecessor to § 17a-112] requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable 'within a reasonable time.' . . . A determination by the trial court under [§ 17a-112 (b) (2)] that the evidence is clear and convincing that the parent has not rehabilitated herself will be disturbed only if that finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Citations omitted; internal quotation marks omitted.) *In re Christina V.*, 38 Conn. App. 214, 220–21, 660 A.2d 863 (1995).

We cannot conclude that the trial court's determination that the respondents have failed to achieve rehabilitation was clearly erroneous. The children have been exposed to hazardous environments and have been in foster care since 1992. The respondents have failed to overcome their substance abuse problems. The respondents visited the children approximately twice a month even though they were permitted weekly visitation. Further, their visits were sporadic, and the children were frequently disappointed when their parents did not show up. The father has been arrested for several drug-related crimes, and the mother failed to appear in court on a charge of disorderly conduct, causing a warrant to be issued for her arrest. After meeting with the respondents and the children, Mantell concluded that it was not likely that the respondents would be able to achieve rehabilitation within a reasonable time.

Additionally, the trial court, in the dispositional phase, made specific findings in accordance with General Statutes § 17a-112 (e) (formerly § 17a-112 [d]). The

trial court made specific findings regarding the seven statutory factors necessary to assure that termination is in the best interest of the children. See *In re Christina V.*, supra, 38 Conn. App. 222–23.

The trial court's findings are summarized as follows. The court found that the department provided appropriate and timely services to the respondents. The department made reasonable efforts to reunite the parents and the children. The department set reasonable expectations that the parents did not meet. The children have strong emotional ties to their foster mother, but she is unable to continue in that capacity and the children need to be able to establish a consistent relationship with a nurturing family. The children were seven and eight years of age at the time of the disposition. The parents have "not made realistic and sustained efforts to conform their conduct to even minimally acceptable parental standards, [and] [g]iving them additional time would not likely bring their performance, as parents, within acceptable standards sufficient to make it in the best interests of the children to be reunited with them." Economic factors did not prevent consistent visitation with the children at the foster mother's home. Although the respondents argue that the department improperly restricted overnight visitation, the trial court found that "this was prudent and appropriate when the agency learned of the parents' continued use of cocaine and their refusal to enter inpatient treatment." The trial court properly applied the best interest standard and found that each of these seven statutory factors had been proven by clear and convincing evidence.

After a review of the record and the briefs, we cannot say that the trial court's finding that there was clear and convincing evidence that the respondents had failed to achieve rehabilitation and that termination was in the best interest of the children was clearly erroneous.

## III

The respondents finally argue that the standard of proof in a termination of parental rights proceeding should be "beyond a reasonable doubt," rather than "clear and convincing evidence," because the right to have children is a fundamental right. We are unpersuaded.

The United States Supreme Court has already settled this issue. See *Santosky* v. *Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). "A majority of the States have concluded that a 'clear and convincing evidence' standard of proof strikes a fair balance between the rights of the natural parents and the State's legitimate concerns. . . . We hold that such a standard adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process. We further hold that determination of the precise burden equal to or greater than that standard is a matter of state law properly left to state legislatures and state courts." Id., 769–70. Our legislature has determined that "clear and convincing evidence" is the appropriate standard in a termination proceeding. See § 17a-112 (c) (formerly § 17a-112 [b]).

The judgment is affirmed.

In this opinion the other judges concurred.