MICHAEL SKAKEL *v.* JONATHAN BENEDICT
(AC 19160)

O'Connell, C. J., and Lavery and Hennessy, Js.

Argued May 27—officially released August 5, 1999*

* August 5, 1999, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*David T. Grudberg*, with whom were *Michael Sherman* and, on the brief, *William F. Dow III*, for the appellant (plaintiff).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan Benedict*, state's attorney, *Domenick J. Galluzzo*, executive assistant state's attorney, and *Bruce Lockwood*, deputy assistant state's attorney, for the appellee (defendant).

*Opinion*

LAVERY, J. The plaintiff, Michael Skakel, appeals from the trial court's denial of his application for injunctive relief. On appeal, the plaintiff claims that the trial court improperly (1) concluded that the information sought by the defendant, Jonathan Benedict,[1] was not protected by our statutory psychiatrist-patient privilege, (2) failed to apply the federal administrative regulations that were in effect at the time he received treatment for alcohol abuse and (3) determined that the state's delay in asserting its alleged right to information concerning his treatment for alcohol abuse did not violate his right to due process under the federal constitution. We reverse the judgment of the trial court and remand the case to that court for further proceedings consistent with this decision.

---

[1] The defendant, Jonathan Benedict, is the state's attorney for the judicial district of Fairfield. Hereinafter, we will refer to the defendant as the state.

The record discloses the following facts and procedural history. Sometime prior to March, 1978, the plaintiff was charged with driving while intoxicated in New York. To resolve that pending criminal charge, he was required to complete an alcohol treatment program at Elan, a treatment facility located in Poland Spring, Maine. The plaintiff was a resident at Elan from March 10, 1978, until February 18, 1980. At the time the plaintiff was admitted to Elan, it was licensed by the state of Maine, Bureau of Rehabilitation, Office of Alcoholism and Drug Abuse, as a residential treatment facility. On August 1, 1979, the Maine department of mental health and corrections issued Elan a conditional license as a mental health facility, which remained effective through February 28, 1980. During the period in question, Elan received federal funding for its therapeutic program.

Elan was founded in 1970 by Gerald E. Davidson, a licensed psychiatrist, and Joseph Ricci. Davidson is now deceased. After Ricci had completed an addiction treatment program at Daytop, a treatment facility located in New Haven, he worked at Daytop and later joined Davidson in founding Elan. Davidson was the medical director at Elan and Ricci was the executive director and therapeutic director. The trial court found that during the period in question, except for Davidson, none of the staff members at Elan had any formal training, degrees or licenses in psychiatry, psychology or social work. Moreover, the trial court found that, aside from Davidson, few, if any, of the staff members were college graduates.

Davidson spent approximately one hour with each new student[2] upon admission and would meet with each

---

[2] In his appellate brief, the plaintiff claims, and the state does not dispute, that Elan provided both schooling and treatment services to its enrollees. In its memorandum of decision, the trial court referred to the enrollees at Elan, including the plaintiff, as "students." For purposes of consistency and clarity, we will also refer to these individuals as students.

student and the student's parents approximately six to nine months later. The scope of diagnosis or treatment at these meetings is unknown. Davidson visited Elan's campus for relatively limited periods since he maintained a practice and resided in Boston, Massachusetts. The trial court found that Davidson visited Elan "at most two or three times a week, sometimes less, and not usually any more . . . [and that] he was very rarely an active participant in the therapeutic program." The staff, under the guidance of Ricci, handled the day-to-day operations at Elan.

The trial court found that "Elan and Daytop are known as therapeutic communities based on behavior modification by self-help with other residents by methods similar to those of Alcoholics Anonymous but with a full-time residential setting." In describing the therapeutic program at Elan, the trial court stated that a new student began by performing menial housekeeping duties under the supervision of a more senior student and staff member. Each weekday, approximately eight to ten students of varying degrees of seniority, with staff supervision, participated in group discussions. "The object of these meetings [was] to share problems and answers to problems based on the experiences of the participants. The shared experiences were to be treated as confidential between the participants." Davidson rarely participated and Ricci occasionally took part in these sessions. On some occasions, students and staff members participated in disciplinary rather than therapeutic sessions called "general meetings" or "haircuts." There was no indication that the plaintiff's therapeutic treatment differed from that of the other students at Elan.

The state has appointed a grand jury to investigate the 1975 death of Martha Moxley, which occurred in Greenwich. In connection with this proceeding, the

state subpoenaed Ricci and Peter McCann, a staff member at Elan, to testify before the grand jury. On or about October 16, 1998, the plaintiff filed an application for injunctive relief seeking permanently to enjoin the state from compelling Ricci and McCann to testify or produce any records relating to his treatment at Elan. The plaintiff claimed that all of the foregoing information was privileged and that it could not be disclosed absent his consent. He also petitioned the trial court to order that all communications, both written and oral, between him and anyone else at Elan should not be disclosed to the grand jury.

Ricci refused to testify before the grand jury, claiming that the information requested by the state was privileged. Thereafter, pursuant to General Statutes § 54-47a, the state filed a motion to compel Ricci to testify. The trial court consolidated the plaintiff's application for injunctive relief and the state's motion to compel. By an oral memorandum of decision, dated December 10, 1998, the trial court denied the plaintiff's application for injunctive relief, but granted the state's motion to compel. The trial court ordered Ricci to testify before the grand jury concerning any statements made by the plaintiff in his presence or that were reported to him, excluding any statements the plaintiff made to Davidson, that related to the plaintiff's knowledge, if any, concerning the circumstances surrounding the death of Moxley. On December 29, 1998, the plaintiff timely filed this appeal. Additional facts will be set forth where necessary to a resolution of the issues on appeal.

I

The plaintiff first claims that the trial court improperly concluded that his communications at Elan, both written and oral, could be disclosed to the grand jury

because this information was not protected by our statutory psychiatrist-patient privilege. See General Statutes §§ 52-146d through 52-146j.[3] In his application for injunctive relief, filed pursuant to § 52-146j, the plaintiff claimed that the information sought by the state was privileged under our psychiatrist-patient privilege. In determining whether the law of this state or the state of Maine governed the plaintiff's claim of privilege, the trial court concluded, and neither party disputes, that the law of this state controls. Accordingly, we will assume without deciding that Connecticut law governs this issue.

The trial court denied the plaintiff's application for injunctive relief, in part, because the information sought by the state was not protected by the psychiatrist-patient privilege. The trial court stated that in order for the plaintiff to invoke the protections afforded by General Statutes § 52-146e, he must satisfy two conditions. First, he must establish that Elan was a "mental health facility" within the meaning of § 52-146d (5). Second, he must demonstrate that the communications and records related to the diagnosis or treatment of a "mental condition" within the meaning of § 52-146d (2). The trial court concluded that the plaintiff satisfied neither of these statutory prerequisites to the invocation of the privilege.[4]

---

[3] In his application for injunctive relief, the plaintiff also cited various subsections of General Statutes § 52-146c, the psychologist-patient privilege; General Statutes § 52-146o, the physician-patient privilege; and General Statutes § 52-146q, the social worker-person privilege. The trial court's memorandum of decision is devoid of any reference to these statutory privileges, and neither party addressed these claims of privilege in their briefs or at oral argument. Therefore, none of these claims of statutory privilege is before this court.

[4] In reaching this conclusion, the memorandum of decision discloses that the trial court interpreted and applied the current revisions of §§ 52-146d (2) and (5) and 52-146e (a). On appeal, neither party has challenged the propriety of the trial court's decision to utilize the current revisions of §§ 52-146d (2) and (5) and 52-146e (a). In the appendix to his brief, the plaintiff himself relies on the current revisions of these statutes. In the absence of any

## A

The plaintiff first claims that the trial court improperly concluded that Elan was not a mental health facility within the meaning of § 52-146d (5). We need not reach this issue because we conclude that the trial court's decision was improperly predicated on the conclusion that, as a condition precedent to the invocation of the psychiatrist-patient privilege, §§ 52-146d and 52-146e required the plaintiff to establish that Elan was a mental health facility within the meaning of § 52-146d (5).

In its memorandum of decision, the trial court stated: "What occurred here, in the court's opinion, was residential treatment in a therapeutic community for substance abuse; and . . . I find that [the plaintiff has] not sustained [his] burden of proving that Elan—as I have found the facts: that [the] staff being all laypersons except for Dr. Davidson—was a mental hospital or, I am sorry, a mental health facility." The trial court denied the plaintiff's application for injunctive relief, in part, because the plaintiff "failed to satisfy the court that the organization of Elan at the time was to the degree of meeting, shall we say, a threshold of being a mental health facility."

In reaching this conclusion, the trial court decided that, as a condition precedent to the invocation of the psychiatrist-patient privilege, §§ 52-146d and 52-146e

claim by either party that the trial court's reliance on the current revisions of the above mentioned statutes was improper, we treat this claim as it was argued by the parties and decided by the trial court.

Moreover, a comparison of the current revisions of §§ 52-146d (2) and (5) and 52-146e (a), which this court interprets and applies in resolving the plaintiff's claim on appeal, to the provisions that were in effect when the plaintiff received treatment between 1978 and 1980 discloses that, despite amendments to § 52-146d in 1982 and 1989; Public Acts 1982, No. 82-160, § 64; Public Acts 1989, No. 89-154, § 2; and an amendment to § 52-146e in 1982; Public Acts 1982, No. 82-160, § 65; the legislature did not effectuate any substantive changes to the relevant portions of these statutes during this period.

required the plaintiff to establish that Elan was a mental health facility within the meaning of § 52-146d (5). "Statutory construction is a question of law and therefore our review is plenary." (Internal quotation marks omitted.) *Butler* v. *Hartford Technical Institute, Inc.*, 243 Conn. 454, 458, 704 A.2d 222 (1997); *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). When interpreting a statute, we are guided by well established tenets of statutory construction. "Our fundamental objective when construing a statute is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 295, 695 A.2d 1051 (1997); *Conway* v. *Wilton*, 238 Conn. 653, 663–64, 680 A.2d 242 (1996).

We begin our analysis with an examination of the text of the relevant statutes. *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 756, 674 A.2d 1313 (1996). Section 52-146e (a) provides in relevant part: "All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. . . ." Section 52-146d (2) provides: " 'Communications and records' means all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatrist, or between a member of the patient's family and a psychiatrist, or between any of such persons and a person participating under the supervision of a psychiatrist in the accomplishment of the objectives of diagnosis and

treatment, *wherever made, including communications and records which occur in or are prepared at a mental health facility* . . . ." (Emphasis added.) Section 52-146d (5) defines mental health facility.

The trial court properly concluded that § 52-146e (a) extends the privilege to "communications and records" as defined in § 52-146d (2). Several factors establish, however, that the trial court improperly construed § 52-146d (2) as extending the privilege only to communications and records that occur in or are prepared at a mental health facility as defined in § 52-146d (5). First, the text of § 52-146d (2) explicitly provides that the privilege covers communications and records relating to the diagnosis or treatment of a patient's mental condition, between certain designated parties, "wherever made." Because "wherever" is not defined either in § 52-146d or in chapter 899 of the General Statutes, it is appropriate to look to the commonly approved meaning of this word. "The words used in a statute must be given their commonly approved meaning, unless a contrary intent is clearly expressed. General Statutes § 1-1 (a) . . . ." (Citations omitted.) *Smith* v. *Safeco Ins. Co. of America*, 225 Conn. 566, 570, 624 A.2d 892 (1993); *Dubaldo* v. *Dept. of Consumer Protection*, 209 Conn. 719, 722, 522 A.2d 813 (1989). "Wherever" is defined as "at, in, or to any or all places that: in any circumstance in which." Webster's Third New International Dictionary. In the absence of any indication that the legislature intended to give "wherever" a different meaning, we will utilize the commonly approved meaning of this word. The legislature's use of the expansive words "wherever made" reflects that it did not intend the privilege to govern only those oral and written communications that occur in or are prepared at a mental health facility.

Second, "wherever made" is immediately followed by the phrase "including communications and records

which occur in or are prepared at a mental health facility
. . . ." General Statutes § 52-146d (2). Although our
Supreme Court has "recognized in the past that the
words include and including can be considered as
words of limitation as well as enlargement"; (internal
quotation marks omitted) *State* v. *DeFrancesco*, 235
Conn. 426, 435, 668 A.2d 348 (1995); *Maciejewski* v.
*West Hartford*, 194 Conn. 139, 147, 480 A.2d 519 (1984);
application of a well established tenet of statutory con-
struction suggests that the legislature used "including
communications and records which occur in or are
prepared at a mental health facility" as an illustrative
application of "wherever made" and not to limit its
scope.

"We presume that the legislature had a purpose for
each sentence, clause or phrase in a legislative enact-
ment, and that it did not intend to enact meaningless
provisions." (Internal quotation marks omitted.) *Hall*
v. *Gilbert & Bennett Mfg. Co.*, supra, 241 Conn. 303;
*Zichichi* v. *Middlesex Memorial Hospital*, 204 Conn.
399, 407, 528 A.2d 805 (1987). "It is a basic tenet of
statutory construction that the legislature did not intend
to enact meaningless provisions. . . . Accordingly,
care must be taken to effectuate all provisions of the
statute." (Citation omitted; internal quotation marks
omitted.) *State* v. *Szymkiewicz*, 237 Conn. 613, 621, 678
A.2d 473 (1996); see *State* v. *Spears*, 234 Conn. 78, 93,
662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S. Ct. 565,
133 L. Ed. 2d 490 (1995). " '[S]tatutes must be construed,
if possible, such that no clause, sentence or word shall
be superfluous, void or insignificant . . . .' " *State* v.
*Szymkiewicz*, supra, 621; see *Bridgeport Hospital* v.
*Commission on Human Rights & Opportunities*, 232
Conn. 91, 100–101, 653 A.2d 782 (1995); *Hopkins* v.
*Pac*, 180 Conn. 474, 476, 429 A.2d 952 (1980). If we
interpreted § 52-146d (2) as extending the psychiatrist-
patient privilege only to communications and records
between designated parties that occurred in or were

prepared at a mental health facility, we would render meaningless the phrase "wherever made." To avoid this result, we interpret "including communications and records which occur in or are prepared at a mental health facility" as an illustrative application of "wherever made."

We conclude that the trial court improperly concluded that the plaintiff was required to establish that Elan was a mental health facility as defined in § 52-146d (5) as a condition precedent to the invocation of the psychiatrist-patient privilege.

B

Although we decided in part I A of this opinion that the trial court improperly concluded that the psychiatrist-patient privilege extends only to communications and records that occur in or were prepared at a mental health facility, we need not reverse the judgment of the trial court if we conclude that it properly determined that the plaintiff failed to establish that the information sought by the state constituted "oral and written communications and records . . . relating to diagnosis or treatment of a patient's *mental condition* . . . ." (Emphasis added.) General Statutes § 52-146d (2). We conclude that the trial court improperly determined that the plaintiff failed to satisfy this requirement.

In its memorandum of decision, the trial court stated: "[F]or the petitioner to prevail under § 52-146d, it is [his] burden of proof to show that . . . these records were in relationship to a patient's mental condition . . . ." The trial court concluded: "I find that [the plaintiff] has *not* sustained [his] burden of proving . . . that the communications were related to a patient's mental condition." The trial court concluded that the plaintiff attended Elan not for the diagnosis or treatment of a mental condition within the meaning of § 52-146d (2), but rather solely for the diagnosis or treatment of alcohol abuse. In reaching this decision, the trial court inter-

preted the statute to mean that an alcohol related disorder did not constitute a mental condition within the meaning of § 52-146d (2). As such, because the state was not seeking disclosure of information that related to the diagnosis or treatment of a patient's mental condition, the trial court concluded that the information sought by the state did not fall within the privilege.

As we have already demonstrated, § 52-146e (a) extends the psychiatrist-patient privilege to "communications and records" as defined in § 52-146d (2). " 'Communications and records' means all oral and written communications and records thereof relating to diagnosis or treatment of a patient's *mental condition* . . . ." (Emphasis added.) General Statutes § 52-146d (2). The plaintiff claims that several factors establish that alcohol related disorders constitute a mental condition within the meaning of § 52-146d (2). On August 1, 1979, the state of Maine issued Elan a conditional license as a mental health facility and this license remained effective through February 28, 1980. He also claims that the psychiatric community recognizes alcohol related disorders as a mental condition. The state contends that, despite the views of the state of Maine and the psychiatric community, our legislature did not intend to include alcohol related disorders within the meaning of "mental condition" in § 52-146d (2).

The determination as to whether communications and records relating to the diagnosis or treatment of an alcohol related disorder fall within the ambit of a "mental condition" in § 52-146d (2) presents a question of statutory interpretation. "Statutory construction is a question of law and therefore our review is plenary." (Internal quotation marks omitted.) *Butler* v. *Hartford Technical Institute, Inc.*, supra, 243 Conn. 458. As we already have stated, our interpretation is guided by well established tenets of statutory construction. See *Hall* v. *Gilbert & Bennett Mfg. Co.*, supra, 241 Conn. 295; *Conway* v. *Wilton*, supra, 238 Conn. 663–64. We begin

our analysis with the words of the statute itself. Neither § 52-146d nor chapter 899 of the General Statutes defines mental condition. Nor is the meaning of this term readily apparent from its context. Although our examination of the legislative history to § 52-146d (2) did not disclose any information useful in resolving this issue, application of several tenets of statutory construction provide us with guidance in ascertaining the meaning the legislature attributed to this term.

First, "[t]he legislature is quite aware of how to use language when it wants to express its intent to qualify or limit the operation of a statute." *State* v. *Ingram*, 43 Conn. App. 801, 825, 687 A.2d 1279 (1996), cert. denied, 240 Conn. 908, 689 A.2d 472 (1997). If the legislature had wanted to exclude alcohol related disorders from the category of mental conditions protected by our state's psychiatrist-patient privilege, it could easily have done so. Neither the text or legislative history of § 52-146d (2), nor chapter 899 of the General Statutes excludes alcohol related disorders or places any limitation on the scope of the term mental condition.

Second, the doctrine of *pari materia* provides that "statutes relating to the same subject matter may be looked to for guidance in reaching an understanding of the meaning of a statutory term." *Doe* v. *Institute of Living, Inc.*, 175 Conn. 49, 58, 392 A.2d 491 (1978); *Stuart* v. *Dept. of Correction*, 221 Conn. 41, 45, 601 A.2d 539 (1992); *State* v. *Hill*, 201 Conn. 505, 515, 523 A.2d 1252 (1986). Chapter 319j of the General Statutes, which is entitled "Addiction Services," is contained in title 17a, which is entitled "Social and Human Services." General Statutes § 17a-688 (c),[5] which is contained in

---

[5] General Statutes § 17a-688 (c) provides: "No person, hospital, treatment facility or the department may disclose or permit the disclosure of the identity, diagnosis, prognosis or treatment of any such patient that would constitute a violation of federal statutes concerning confidentiality of alcohol or drug patient records and any regulations pursuant thereto, or as they may be amended from time to time. The department shall adopt regulations to protect the confidentiality of information obtained by it."

chapter 319j, requires persons, hospitals, treatment facilities and the department of mental health and addiction services to comply with federal confidentiality laws and regulations concerning alcohol and drug patient records. General Statutes § 17a-680, which is also contained in chapter 319j and governs General Statutes §§ 17a-680 through 17a-690, sets forth several definitions. General Statutes § 17a-680 (1) provides that " '[a]lcohol-dependent person' means a person who has a psychoactive substance dependence on alcohol as that condition is defined in the most recent edition of the American Psychiatric Association's 'Diagnostic and Statistical Manual of Mental Disorders' . . . ."

The text of § 17a-688 (c) manifests our legislature's intention to afford confidentiality to the records of individuals who seek diagnosis or treatment for alcohol related disorders by mandating compliance with "federal statutes concerning confidentiality of alcohol . . . patient records and any regulations pursuant thereto . . . ." Of greater significance, § 17a-680 (1) reflects our legislature's awareness of the mental or psychological aspect of many alcohol related disorders and its recognition that the psychiatric community regards many of such disorders as mental disorders. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th Ed. 1994) pp. 194–204.[6] In the absence of any legislative intent to the contrary and

[6] The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders classifies several types of alcohol related disorders: alcohol use disorders, which include alcohol dependence and alcohol abuse, and alcohol induced disorders, which include alcohol intoxication, alcohol withdrawal, alcohol intoxication delirium, alcohol withdrawal delirium, alcohol induced persisting dementia, alcohol induced persisting amnestic disorder, alcohol induced psychotic disorder with delusions, alcohol induced psychotic disorder with hallucinations, alcohol induced mood disorder, alcohol induced anxiety disorder, alcohol induced sexual dysfunction and alcohol induced sleep disorder. Diagnostic and Statistical Manual of Mental Disorders, supra, p. 195.

in accordance with the presumption that our legislature intends to create a consistent body of law, we interpret § 52-146d (2) in a manner that is consistent with §§ 17a-680 (1) and 17a-688 (c).

Third, when we interpret a statute, our fundamental objective is to give effect to the apparent intent of the legislature. See *Hall* v. *Gilbert & Bennett Mfg. Co.*, supra, 241 Conn. 295. "[W]e interpret statutory language in light of the purpose and policy behind the enactment." *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 26, 717 A.2d 77 (1998); *State* v. *Pieger*, 240 Conn. 639, 646, 692 A.2d 1273 (1997). "[T]he purpose of the privilege is to give the patient an incentive to make full disclosure to a physician in order to obtain effective treatment free from the embarrassment and invasion of privacy which could result from a doctor's testimony." *State* v. *White*, 169 Conn. 223, 234–35, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975); see *Bieluch* v. *Bieluch*, 190 Conn. 813, 819, 462 A.2d 1060 (1983). This statutory privilege ensures the patient that confidential communications that are necessary for effective treatment or diagnosis may be safely disclosed to a psychiatrist. See *Bieluch* v. *Bieluch*, supra, 819. Interpreting mental condition in § 52-146d (2) to include alcohol related disorders would effectuate the legislature's objective by providing individuals who suffer from such disorders with an incentive to seek treatment and to make a full disclosure to a psychiatrist. In contrast, the trial court's interpretation frustrates that objective.

Lastly, although the following information does not provide any insight into the legislative intent underlying § 52-146d (2), we note for illustrative purposes only that our interpretation of this statute is consistent with dictum from this court and our Supreme Court. An examination of our case law discloses that individuals

who suffer from alcohol related disorders often seek psychiatric treatment and we have referred in dictum to communications and records made in the course of seeking such treatment as "psychiatric communications and records." "The people of this state enjoy a broad privilege in the confidentiality of their psychiatric communications and records, *including those pertaining to their diagnosis, prognosis or treatment for alcohol abuse or alcoholism.* See General Statutes §§ 17-155bb (b), *52-146d, 52-146e.*" (Emphasis added.) *State* v. *D'Ambrosio,* 212 Conn. 50, 55, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990); see *State* v. *Joyner,* 225 Conn. 450, 478, 625 A.2d 791 (1993); *State* v. *Grant,* 33 Conn. App. 647, 654, 637 A.2d 1116, cert. denied, 229 Conn. 910, 642 A.2d 1206 (1994). Moreover, our interpretation of § 52-146d (2) is consistent with decisions from other jurisdictions that have, under different circumstances, viewed alcohol abuse or alcoholism as a disease. See *Adams* v. *Weinberger,* 548 F.2d 239, 244 (8th Cir. 1977) ("[w]e are not so Victorian as to be indifferent to the expanding theory of alcoholism being a disease"); *Connecticut General Life Ins. Co.* v. *Dept. of Industry, Labor & Human Relations,* 86 Wis. 2d 393, 407, 273 N.W.2d 206 (1979) ("[a]lcoholism is a disease [and] [i]ts diagnosis is a matter of expert medical opinion").

The state claims that our Supreme Court's decision in *State* v. *Rollinson,* 203 Conn. 641, 652–58, 526 A.2d 1283 (1987), establishes that the psychiatrist-patient privilege does not protect any communications or records relating to the diagnosis or treatment of alcohol related disorders. The state's reliance on *Rollinson* is misplaced. In *Rollinson,* the defendant claimed that the trial court improperly denied his motion to suppress several statements he made to the staff and patients of a hospital's detoxification unit. Id., 652. The Supreme Court did not determine whether this statutory privilege

extended to communications and records relating to the diagnosis or treatment of alcohol related disorders because the defendant "[c]onced[ed] that none of these statements [fell] expressly within the statutory privilege of confidential communications with a psychiatrist or a psychologist . . . ." (Citation omitted.) Id. We decline to transform the defendant's concession in *Rollinson* into a legal conclusion that all records and communications relating to the diagnosis or treatment of alcohol related disorders do not fall within the psychiatrist-patient privilege. On the basis of all of the foregoing factors, we conclude that the trial court improperly concluded that an alcohol related disorder did not fall within the meaning of "mental condition" in § 52-146d (2).

We conclude, therefore, that both of the factors the trial court relied on in rejecting the plaintiff's claim of privilege were improper. Because the trial court disposed of this claim on both of those grounds, it did not determine whether the plaintiff satisfied the remaining criteria necessary to invoke the psychiatrist-patient privilege. For example, the trial court did not determine whether any of the communications and records sought by the state were related "to diagnosis or treatment" of the plaintiff's alcohol related condition. General Statutes § 52-146d (2). Nor did the trial court determine whether any of the communications and records sought by the state were made "between the patient and a psychiatrist, or between a member of the patient's family and a psychiatrist, *or between any of such persons and a person participating under the supervision of a psychiatrist in the accomplishment of the objectives of diagnosis and treatment . . . .*" (Emphasis added.) General Statutes § 52-146d (2). We, therefore, reverse so much of the trial court's decision as pertains to this issue and remand the case to the trial court with the direction that it determine whether the plaintiff has

satisfied the remaining criteria necessary to invoke the statutory psychiatrist-patient privilege.

## II

The plaintiff next claims that the trial court improperly failed to apply the federal administrative regulations, which afford confidentiality to alcohol patient records, that were in effect at the time he received treatment at Elan. See 42 C.F.R. § 2.1 et seq. Those regulations were enacted pursuant to the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, now codified in 42 U.S.C. § 290dd-2.

## A

As a threshold matter, the state claims that we cannot review this claim because the plaintiff cited neither the federal act and regulations nor § 17a-688 (c), which requires the state to comply with the federal act and regulations, in his application for injunctive relief. We do not agree and conclude that, after a careful examination of the record in light of relevant precedent, the plaintiff's noncompliance with Practice Book § 10-3 (a) does not preclude us from reviewing this claim in the context of deciding his appeal from the trial court's denial of his application for injunctive relief.

The following additional facts are relevant to a resolution of this issue. In his application for injunctive relief, dated October 16, 1998, the plaintiff did not cite the federal act and regulations or § 17a-688 (c). In paragraph 5 (c) of the "state's brief in opposition to [the plaintiff's] motion for injunctive relief," dated November 5, 1998, the state conceded that the disclosure of records relating to the diagnosis or treatment of substance abuse is controlled by the federal act and regula-

tions, but claimed that for several reasons the plaintiff was not entitled to relief under this body of law.[7] In paragraph 5 (c) of the "addendum to the state's brief in opposition to the [the plaintiff's] motion for injunctive relief," filed December 1, 1998, the state claimed that

[7] Paragraph 5 (c) of the "state's brief in opposition to [the plaintiff's] motion for injunctive relief," dated November 5, 1998, states:

"C. Substance Abuse Therapy Privilege

"While apparently not all residents at Elan even attended for the purpose of substance abuse therapy, the institution was licensed to render that type of service during the [plaintiff's] stay. If the court were to conclude that substance abuse therapy was the purpose of the peer encounter meetings, communications made therein are not protected by either jurisdiction's psychiatrist-patient privilege. *State* v. *White*, 169 Conn. 223, 234, [363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975)]; *State* v. *Boobar*, [637 A.2d 1162 (Me. 1994)]. *However, such communications may receive some protection under the individual state's drug rehabilitation schemes.* Connecticut General Statutes § 19-496c [Public Acts 1971, No. 858]; *State* v. *White*, supra, 233; *State* v. *Rollinson*, [supra, 203 Conn.] 654 n.11; [Me. Rev. Stat. Ann. tit. 32, § 13862 (West Sup. 1996)]; *State* v. *Boobar*, supra [1169].

*"The privilege created however by the foregoing legislation is controlled by the federal Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act, 42 U.S.C. § 290dd-2.* Given both the language of that statute and the judicial gloss given it by the respective jurisdictions, the protection provided can only be said to be quite limited. In Connecticut confidentiality is only given to [a] treatment center's records and is not extended to 'personal observations' made without recourse to records. *State* v. *White*, supra, [169 Conn.] 236. See also *United States* v. *Fenyo*, 6 USMJ 933 (AFCMR 1979); *United States* v. *Thomas*, 26 USMJ 735 (ACMR 1988). Maine, on the other hand, has determined that no privilege exists at all; rather the statutory scheme provides only a fine as a remedy. *State* v. *Boobar*, supra, [637 A.2d 1169].

"Regardless of whether 42 U.S.C. [§ 290dd-2] creates an actual privilege, it also provides an exception to confidentiality upon order of a court 'showing good cause therefor.' 42 U.S.C. § 290dd-2 (b) (c). The applicable federal regulation has defined good cause to include an extremely serious crime such as homicide. 42 C.F.R. § 2.65. Most importantly, this exception has been specifically recognized in such a situation on a local level. *State* v. *Rollinson*, supra, [203 Conn.] 654–56; see also *In re Marvin M.*, 48 Conn. App. 563, 573, [711 A.2d 756, cert. denied, 245 Conn. 916, 719 A.2d 900 (1998)]. Clearly, where privilege is claimed for communications in peer encounter sessions or private conversations at Elan in the instant case, the exceptions would apply as well." (Emphasis added.)

the information it sought fell within an exception to the protections afforded by the federal act and regulations.[8]

On December 9, 1998, each of the parties presented arguments to the trial court. The record discloses that Benedict represented the state, John Campbell represented Ricci and Elan, and both Linda Kenney and Michael Sherman represented the plaintiff. Benedict neither claimed, nor does the record disclose, that his arguments concerning the federal act and regulations related solely to the trial court's disposition of the state's motion to compel. Kenney, who represented only the plaintiff, claimed that the plaintiff was entitled to relief under the federal act and regulations, and the record discloses that the state did not claim that the plaintiff's failure to cite the federal act and regulations or § 17a-688 (c) in his application for injunctive relief precluded him from relying on this body of law.

In its memorandum of decision, dated December 10, 1998, the trial court addressed both the plaintiff's application for injunctive relief and the state's motion to compel. Several excerpts from the memorandum of

---

[8] In paragraph 5 (c) of the "addendum to [the] state's brief in opposition to [the plaintiff's] motion for injunctive relief," filed December 1, 1998, the state claimed:

"VC. Substance Abuse Therapy Privilege

"As noted in the State's Brief, a limited privilege is afforded under the respective state's Substance Abuse Therapy laws (Connecticut General Statutes § 19-496c [Public Acts 1971, No. 858] and [Me. Rev. Stat. Ann. tit. 32, § 13862 (West Sup. 1996)]). *These statutory schemes both incorporate the provisions of federal law. 4[2] U.S.C. § 290dd-2.* While the states have limited the scope of protection permitted by the scheme, the underlying federal statute also provides a notable exception to a claim of any protection whatsoever in the instance of 'an extremely serious crime.' 42 C.F.R. § 2.65.

"The above cited rule has been explicitly interpreted in Connecticut to cover just such a situation as a murder investigation. *State* v. *Rollinson,* supra, [203 Conn.] 654–56. Clearly in enacting 42 C.F.R. § 2.65, Congress struck a balance between the needs of confidentiality to effective substance therapy and the interests of justice in criminal matters of extreme seriousness." (Emphasis added.)

decision reflect that the trial court addressed both the statutory psychiatrist-patient privilege and federal law in its disposition of the plaintiff's application for injunctive relief.[9]

The following principles govern our review. Practice Book § 10-3 (a) provides that "[w]hen any claim made in a complaint, cross complaint, special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number." Our Supreme Court has repeatedly stated, however, that § 10-3 (a) is merely directory and not mandatory. *Steele* v. *Stonington*, 225 Conn. 217, 221 n.7, 622 A.2d 551 (1993); *Hanover Ins. Co.* v. *Fireman's Fund Ins. Co.*, 217 Conn. 340, 345, 586 A.2d 567 (1991); *Rowe* v. *Godou*, 209 Conn. 273, 275, 550 A.2d 1073 (1988). We have excused noncompliance with § 10-3 (a) where the record discloses that neither the opposing party nor the trial court were confused or misled as to the statutory basis of the party's claim. See *Hanover Ins. Co.* v. *Fireman's Fund Ins. Co.*, supra, 345 ("[i]n the absence of any showing that either Hanover or the trial court was misled by the failure to cite [General Statutes] § 38-100 in addition to [General Statutes] §§ 38-97 and 38-98, we conclude that the issue raised by Fireman's special defense was properly before the court"); *Goodrich* v. *Diodato*, 48 Conn.

---

[9] Several excerpts from the memorandum of decision reflect that the trial court considered both our state's psychiatrist-patient privilege and the federal act and regulations in its decision to deny the plaintiff's application for injunctive relief. The trial court stated: "It is the burden of the person seeking the privilege to prove the applicability of the statutory privilege, and we actually have two statutes that we have to concern ourselves with, or two bodies of law we have to concern ourselves with; and that is the laws of the State of Connecticut which may relate to privileged communications, and also the laws of this United States concerning the privilege[d] communications that may occur in certain therapeutic settings. . . .

"Thus, we must address the laws of the State of Connecticut and applicable federal law to determine if any of those verbal communications of [the plaintiff] at Elan are privileged based on applicable statutes, since without a statutory privilege they would be discoverable."

App. 436, 443, 710 A.2d 818 (1998) ("[a]lthough the defendant did not specifically refer to [General Statutes] § 47-21 in her special defense, the defendant sufficiently apprised the trial court of her special defense of ouster"); *DeVita* v. *Esposito*, 13 Conn. App. 101, 104, 535 A.2d 364 (1987) ("there can be no confusion about the basis for the plaintiff's cause of action, and there can be no doubt that General Statutes § 47-31 served as the basis for the plaintiff's action to quiet title").

In the present case, the foregoing precedent establishes that the plaintiff's noncompliance with § 10-3 (a) does not preclude our review of this claim because the record discloses that neither the state nor the trial court were confused or misled as to the basis for the plaintiff's application for injunctive relief. The state cannot claim that it was confused or misled by the plaintiff's noncompliance with § 10-3 (a) because, as evidenced by the state's responsory memoranda, the plaintiff's allegations were sufficient to apprise the state of his reliance on federal law. In both its memorandum of law in opposition to the application for injunctive relief and its addendum to that memorandum, the state argued that the federal act and regulations did not protect the information in question from disclosure. Moreover, during arguments before the trial court, Kenney, who represented only the plaintiff, apprised both the state and the trial court of her client's reliance on federal law. Our review of this claim is therefore proper.

B

The state next claims that, even if the plaintiff's noncompliance with § 10-3 (a) does not preclude our review of this claim, the plaintiff cannot file an application for injunctive relief seeking to enforce the protections afforded by 42 U.S.C. § 290dd-2 and the corresponding federal regulations. We disagree and conclude that

§ 17a-688 (c),[10] which mandates that the state comply with this federal act and these federal regulations, impliedly authorizes the plaintiff to maintain a private right of action for injunctive relief.[11]

The text of § 17a-688 (c) does not explicitly authorize a private right of action for injunctive relief. "In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose . . . benefit the statute was enacted . . . ? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . *Cort* v. *Ash*, 422 U.S. 66, 78, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975)." (Internal quotation marks omitted.) *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 249–50, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997).[12]

---

[10] See footnote 5.

[11] In reaching this conclusion, it is necessary to emphasize that we determine only whether our legislature, by mandating in § 17a-688 (c) that all persons, hospitals, treatment facilities and the department of mental health and addiction services shall not violate "federal statutes concerning confidentiality of alcohol or drug patient records and any regulations pursuant thereto," impliedly authorized a private right of action for injunctive relief. Because we conclude that § 17a-688 (c) confers a private right of action affording injunctive relief, it is unnecessary for us to determine whether 42 U.S.C. § 290dd-2 or the corresponding federal regulations authorize a private right of action. Additionally, our holding is limited to the conclusion that § 17a-688 (c) authorizes the plaintiff to maintain a right of action for injunctive relief. We express no opinion concerning whether this statute affords a private right of action for monetary damages or other remedies.

[12] The United States Supreme Court lists a fourth factor in *Cort* v. *Ash*, supra, 422 U.S. 78, namely, whether "the cause of action [is] one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" In *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, supra, 238 Conn. 250 n.32, our Supreme Court held that it was unnecessary to apply this fourth factor in determining whether a state statute impliedly authorized a private remedy. Because our analysis is limited to the determination of

First, the plaintiff, who sought treatment for alcohol abuse, is a member of the class for whose benefit the legislature enacted § 17a-688 (c). "[O]ur legislature has expressly addressed the issue of confidentiality of records by protecting records whose disclosure 'would constitute a violation of federal statutes concerning confidentiality of alcohol or drug patient records and any regulations pursuant thereto . . . .' General Statutes § 17a-688 (c)." *In re Marvin M.*, 48 Conn. App. 563, 576, 711 A.2d 756, cert. denied, 245 Conn. 916, 719 A.2d 900 (1998). In § 17a-688 (c), our legislature afforded protection to the class of individuals who seek diagnosis or treatment for alcohol related disorders by mandating that all persons, hospitals, treatment facilities and the department of mental health and addiction services must comply with federal law and regulations concerning the confidentiality of alcohol patient records.

Second, we do not find any indication, explicit or implicit, in the legislative history that the legislature intended either to deny or to create a private right of action for injunctive relief. The legislative history is silent in this respect. Third, providing a private right of action to the plaintiff is consistent with the underlying purposes of § 17a-688 (c). Authorizing this right of action would enable those for whose benefit the statute was enacted to protect the rights our legislature has afforded them. Additionally, the existence of a private enforcement mechanism would encourage and promote compliance with the statute's directives. We are persuaded that, under the criteria set forth in *Cort* v. *Ash*, supra, 422 U.S. 78, a private right of action for injunctive relief exists under § 17a-688 (c).

whether § 17a-688 (c) authorizes a private right of action for injunctive relief, and we do not determine whether 42 U.S.C. § 290dd-2 and the corresponding federal regulations authorize this remedy, the fourth *Cort* factor does not apply to our analysis.

Moreover, our conclusion derives additional support from our legislature's failure to allocate the responsibility of enforcing § 17a-688 (c) to an administrative agency or other governmental entity. "[W]here the legislature wishes to limit enforcement of a statute to an administrative body, it has expressly done so." *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, supra, 238 Conn. 251. In the present case, the legislature neither explicitly nor implicitly vested enforcement power with an administrative body. Nor did it explicitly or implicitly vest enforcement power in the criminal justice system. The legislature has not stated that a violation of § 17a-688 (c) may result in a fine or incarceration or both. The absence of any enforcement mechanism militates in favor of authorizing a private right of action, thereby enabling those for whose benefit this statute was enacted to protect the rights conferred upon them by the legislature.

C

The state next claims that we cannot review the plaintiff's claim because he did not appeal from a final judgment of the trial court. Specifically, the state contends that the portion of the trial court's memorandum of decision, which addresses the federal act and regulations, relates solely to the trial court's disposition of its motion to compel. It therefore characterizes the plaintiff's claim as an appeal from the denial of the state's motion to compel. Although the state conceded at oral argument that the trial court's denial of the plaintiff's application for permanent injunctive relief constitutes an appealable final judgment, it claims that the trial court's decision to grant the state's motion to compel is not an appealable final judgment.

The state's argument presupposes, however, that the plaintiff's failure to cite the federal act and regulations or § 17a-688 (c) in his application for injunctive relief

precludes this court from construing that portion of the trial court's memorandum of decision, which addresses the federal act and regulations, as relating to the disposition of both the plaintiff's application for injunctive relief and the state's motion to compel. As we have already demonstrated, a careful examination of the entire record in light of § 10-3 (a) and relevant precedent establishes that the plaintiff's failure to cite the federal act and regulations or § 17a-688 (c) in his application for injunctive relief does not preclude this court from reviewing this issue in the context of deciding his appeal from the denial of that application. Because we review this issue in the context of deciding the plaintiff's appeal from the denial of his application for injunctive relief and the trial court's denial of that application constitutes an appealable final judgment, it is unnecessary for us to determine whether the trial court's decision to grant the state's motion to compel constitutes an appealable final judgment.

D

Having determined that the plaintiff's federal law claim is properly before us, we now reach its merits. The plaintiff contends that the trial court improperly applied the current federal regulations instead of those regulations that were in effect at the time he received treatment at Elan between 1978 and 1980. Although the plaintiff claims that the trial court should have applied the regulations that were in effect when he received treatment, he briefed and analyzed only 42 C.F.R. §§ 2.63 and 2.65. We therefore limit our review to these two regulations.[13]

---

[13] "We are not required to review issues that have been improperly presented to this court through an inadequate brief." *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 44–45, 699 A.2d 101 (1997). "Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Cummings* v. *Twin Tool Mfg. Co.*, 40 Conn. App. 36, 45, 668 A.2d 1346 (1996).

Section 2.65 governs any application by an investigative or prosecutorial agency for an order to permit disclosure or use of patient records for the purpose of conducting an investigation or prosecution of an individual who is a present or former patient in a program. 42 C.F.R. § 2.65 (a). Section 2.65 (d), formerly § 2.65 (c), sets forth several criteria that the applicant must satisfy in order to obtain use or disclosure of a patient's records. The plaintiff concedes that "[o]n appeal, [he] does not challenge the trial court's application of the balancing test" under § 2.65 (d) and that the criteria in § 2.65 (c) are "similar to those applied by the trial court" under § 2.65 (d). Moreover, he concedes that "[t]he current regulations are very similar, and in some cases identical, to the older regulations, with the exception of the more restrictive rule [§ 2.63] . . . forbidding disclosure of anything except objective data, even where 'good cause' for disclosure is found." In the absence of any showing by the plaintiff that he was prejudiced by the trial court's application of the current version of § 2.65, we conclude that the trial court's reliance on this regulation was not improper.

The plaintiff next contends that the "key provision of the 1978 regulations" is § 2.63. Section 2.63 was promulgated in 1975; 40 Fed. Reg. 27802 (1975); *Whyte* v. *Connecticut Mutual Life Ins. Co.*, 818 F.2d 1005, 1010 n.14 (1st Cir. 1987); and it imposed certain limitations on the scope of disclosure. "Congress recognized that . . . confidentiality is necessary to ensure successful alcoholism treatment. Without guarantees of confidentiality, many individuals with alcohol problems would be reluctant to participate fully in alcoholism programs. The regulations, especially § 2.63, were specifically drafted with these considerations in mind." *Whyte* v. *Connecticut Mutual Life Ins. Co.*, supra, 1010. In 1987, the Department of Health and Human Services, Public Health Service amended § 2.63. See 52 Fed. Reg.,

Department of Health and Human Services, Public Health Service, pp. 21,801–21,802 (June 9, 1987) (discussing substantive changes brought about by 1987 amendment to § 2.63). This amendment established several exceptions to the pre-1987 version of § 2.63, which had limited court-ordered disclosure to objective data.[14]

---

[14] The following excerpt from the Federal Register outlines the substantive changes effectuated by the 1987 amendment to § 2.63: "The existing regulations at § 2.63 limit a court order to 'objective' data and prohibit court-ordered disclosure of 'communications by a patient to personnel of the program.' The proposed regulations delete the provision restricting a court order to objective data and precluding an order from reaching 'communications by a patient to personnel of the program.' Deletion of that provision provoked considerable discussion and concern on the part of a large number of persons, 85% of whom opposed allowing court-ordered disclosure of nonobjective data.

"The Final Rule at § 2.63 restores protection for many 'communications by a patient to personnel of the program' and information which is of a nonobjective nature, but it does not protect that information from court order in the face of an existing threat to a third party or in connection with an investigation or prosecution of an extremely serious crime." 52 Fed. Reg., Department of Health and Human Services, Public Health Service, p. 21,801 (June 9, 1987).

Prior to its amendment in 1987, § 2.63 provided: "Limitation to objective data—Rules.

"(a) Limitation to objective data. Except as provided in paragraph (b) of this section, the scope of an order issued pursuant to this subpart may not extend to communications by a patient to personnel of the program, but shall be limited to the facts or dates of enrollment, discharge, attendance, medication, and similar objective data, and may include only such objective data as is necessary to fulfill the purposes for which the order is issued.

"(b) Exception. When a patient in litigation offers testimony or other evidence pertaining to the content of his communications with a program, an order under this subpart may authorize the submission of testimony or other evidence by the program or its personnel."

The current version of § 2.63 provides: "Confidential communications.

"(a) A court order under these regulations may authorize disclosure of confidential communications made by a patient to a program in the course of diagnosis, treatment, or referral for treatment only if:

"(1) The disclosure is necessary to protect against an existing threat to life or of serious bodily injury, including circumstances which constitute suspected child abuse and neglect and verbal threats against third parties;

"(2) The disclosure is necessary in connection with investigation or prosecution of an extremely serious crime, such as one which directly threatens loss of life or serious bodily injury, including homicide, rape, kidnapping,

The plaintiff contends that there is no authority to support the trial court's conclusion that the current version of § 2.63, which was amended in 1987, must be applied retroactively. "[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." (Internal quotation marks omitted.) *Landgraf* v. *USI Film Products*, 511 U.S. 244, 265, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994). "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen* v. *Georgetown University Hospital*, 488 U.S. 204, 208, 109 S. Ct. 468, 102 L. Ed. 2d 493 (1988); see *Green* v. *General Dynamics Corp.*, 245 Conn. 66, 80, 712 A.2d 938 (1998) (*Borden, J.*, dissenting) (there is "a presumption that legislation is prospective . . . and we have generally required a strong showing of legislative intent to overcome that presumption"[citation omitted]); *Anderson* v. *Schieffer*, 35 Conn. App. 31, 41, 645 A.2d 549 (1994) ("as rule of construction, legislation to be applied prospectively absent clear intent to contrary").

The state neither cites in its appellate brief, nor does our review of the relevant portions of the Federal Register disclose, any clear indication that the Department

---

armed robbery, assault with a deadly weapon, or child abuse and neglect; or

"(3) The disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of the confidential communications."

of Health and Human Services, Public Health Service intended the 1987 amendment of § 2.63, which effectuated substantive changes, to be applied retroactively. See 52 Fed. Reg., Department of Health and Human Services, Public Health Service, pp. 21,796–21,814, 41,996–97, 42,061 (1987). In the absence of any clear evidence that this administrative agency intended the 1987 amendment to be applied retroactively, we conclude that the trial court's reliance on the current version of § 2.63 was improper.

We, therefore, reverse so much of the trial court's decision as pertains to this claim and remand the case to the trial court with the direction that it apply the appropriate version of § 2.63 in determining whether disclosure of the information sought by the state is warranted. We do not reach, nor should our decision be construed as addressing, whether § 2.63 prohibits or authorizes the disclosure of any of the information sought by the state. Nor should our decision be construed as rendering an advisory opinion concerning the scope of the protection, if any, afforded by this regulation. Resolution of these issues are properly reserved for the trial court on remand.[15]

---

[15] The state also contends that, even assuming the trial court should have applied the version of § 2.63 that was in effect when the plaintiff received treatment at Elan, an application of this regulation to the facts of this case demonstrates that the trial court's order was proper. We properly reserve the determination of this issue for the trial court on remand. We also decline the state's invitation to render an advisory opinion concerning the scope of the protection, if any, afforded by this regulation.

The state also maintains that the pre-1987 version of § 2.63 is void because it conflicts with its enabling legislation. Specifically, it claims that "if § 2.63 of the 1978 regulations is broadly read as prohibiting the disclosure of [the plaintiff's] statements, and, contrary to the contention of the state, those to whom he spoke are considered program personnel, the trial court order should nevertheless be upheld. Interpreting this regulation so as to prohibit disclosure of any part of a patient's record, despite the requisite findings regarding 'cause,' would fatally conflict with the plain language of the [enabling] statute." The state's contention that the pre-1987 version of § 2.63 conflicts with the enabling statute is predicated on its assumption that either this court or the trial court have interpreted or will interpret § 2.63 "as

## III

In his final claim, the plaintiff contends that the state's delay in asserting its alleged right to information concerning his treatment for alcohol abuse violated his right to due process under the federal constitution. We decline to review this claim.

The plaintiff neither claims, nor does our review of the record disclose, that he raised this claim before the trial court. The memorandum of decision is devoid of any reference to this claim. "It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. Practice Book § 60-5; *Yale University* v. *Blumenthal*, 225 Conn. 32, 36 n.4, 621 A.2d 1304 (1993) (issue not reviewed because not raised at trial). This court will review claims not raised at trial only in extraordinary circumstances. See *Williamson* v. *Commissioner of Transportation*, 209 Conn. 310, 317, 551 A.2d 704 (1988). [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court. Practice Book § 4185, [now § 60-5] (court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial); *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996) (claims neither addressed nor decided by court below are not properly before appellate tribunal) . . . ." (Citation omitted; internal quotation marks omitted.) *W.* v. *W.*, 248 Conn. 487, 505–506, 728 A.2d 1076 (1999); *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 245 Conn. 52. "This general rule against considering claims not

prohibiting the disclosure of [the plaintiff's] statements and . . . [treating] those to whom [the plaintiff] spoke . . . [as] program personal." As we have already stated, we properly reserve for the trial court on remand the task of applying this regulation to the facts of this case and determining the scope of the protection, if any, afforded by this regulation. Because the conditions that undergird the state's claim have not yet occurred, or may never occur, this claim is premature. Therefore, we will not consider it.

raised at trial also applies to constitutional issues. *Berry* v. *Loiseau*, 223 Conn. 786, 828, 614 A.2d 414 (1992); *Roche* v. *Fairfield*, 186 Conn. 490, 505, 442 A.2d 911 (1982)." *Statewide Grievance Committee* v. *Whitney*, 227 Conn. 829, 846, 633 A.2d 296 (1993). Accordingly, we will not review this claim.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.