[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 15789
This appeal was generated as a result of the State's exercise of its right of eminent domain and the assessment of damages arising from that exercise. Hazel Rosa (hereinafter the appellant) is the owner of a vacant parcel of land on Boyden Street in Waterbury consisting of forty-five thousand nine hundred eighty (45, 980) square feet (1.06 acres). The City of Waterbury believed that a realignment of Boyden Street was necessary in order to make it safer, and requested help from the Commissioner of Transportation (hereinafter Commissioner). This request resulted in an agreement between the Commissioner and the city pursuant to which the city developed a roadway construction plan and the Commissioner acquired the necessary land therefor. Upon completion of the project and when an agreement between the parties with respect to roadway maintenance is reached, the Commissioner will convey the land over to the city.
On January 14, 2000, the Commissioner acquired nineteen hundred fifty-six square (1,956) feet in fee simple, together with a slope easement over twenty-six square (26) feet of the Rosa parcel. The condemned portion as well as the entire lot is very steep and contains substantial ledge and outcroppings. The property was appraised and the Commissioner assessed damages in the amount of six thousand six hundred ($6600) dollars in accordance with that appraisal. The appellant perfected a condemnation appeal under § 13a-76 of the General Statutes, and on November 6, 2000, filed a request to amend her condemnation appeal to add a claim under § 48-24 of the said General Statutes. The Commissioner objected to that proposed count and that objection was sustained. Therefore, it is not a pleading in this case.
Despite the adverse ruling, the appellant relies and argues vigorously as though the amendment were granted, and the State also argues thereunder in its resistance to this appeal. Upon first blush, it might well appear that the failure to plead that specific statutory provision is a fatal flaw in this appeal. Section 10-3(a) of the Practice Book provides (1) that any claim in a complaint, cross-complaint, special defense or other pleading which is grounded on a statute, that that statute shall be specifically identified by its number.[1] However, our Appellate Court, citing Supreme Court decisions, has repeatedly stated that § 10-3(a) is merely directory and not mandatory. Skakel v. Benedict, 54 Conn. App. 663, 684 (1999) and cases cited therein. Consequently, that section of the Practice Book presents no bar to this proceeding.[2]
The parties were ordered to exchange copies of their appraisal reports as is standard procedure. The Commissioner complied but the appellant CT Page 15790 advised the court that she decided against obtaining an appraisal and would accept the values set forth in the State's appraisal. That report, as previously indicated, valued the taken parcel at sixty-six hundred ($6600) dollars and the entire parcel at twenty-seven thousand five hundred ($27,500) dollars. Prior to the taking, the subject property had ninety-five (95) feet of frontage on Boyden Street and was thereby considered ninety-five (95) feet wide and in conformance with Waterbury Zoning Regulations applicable to an RL Zone. The appellant contends that as a result of the taking, the subject property possessed thirty (30) feet of frontage and was thereby considered thirty (30) feet wide in violation of § 323(b) of those regulations.
The project manager gave due consideration to the loss of the width and frontage of the remnant property. However, because the loss did not reduce the size of the lot sufficiently to violate the minimum square footage requirements thereby violating the Waterbury Zoning Regulations, he concluded that the provisions of § 48-24 did not apply. The appellant, of course, argues that the taking has rendered the vacant parcel nonconforming with the city's lot frontage requirements. The Commissioner offers three alternative arguments: (1) as of the condemnation date there was no need for a frontage variance; (2) if one was required it would probably have been granted and a taking of excess land would not have been required; and (3) § 48-24 merely directory and only applies to lot area variances.
The appellant contends that it is extremely important to note that the State's interpretation of the statute did not at the time of taking consider the effect upon the width of the lot and analyze the definitions found in §§ 8.65, 8.67 and 8.69 of the Waterbury Zoning Regulations. It is conceded that Boyden is a city street and that all of the condemned property was owned by the State. The appellant further asserts that the State admitted that a maintenance agreement was to be entered into by the city and the State which indicated to her that title would never pass. The simple fact testified to by the zoning enforcement officer was that the condemned property was a separate lot, that the width of the remnant piece was measured by the thirty (30) foot line abutting Boyden Street.
The Commissioner argues on the first of the alternative arguments, that "frontage" means the part of the parcel or lot which gives access frontage on a street, access highway, or public way. He cites 4 EC Yonkley, Zoning Law and Practice 4th ed. § 23-8. In reliance upon that section, the Commissioner continues that the object of frontage requirements is to advance the public health and safety objectives of the zoning code, by requiring the lot owner to place the front of his or her building so that it is facing a public street or way and has unobstructed access to that street or way. Such unobstructed access to the front of CT Page 15791 the building is a safety measure which is calculated to give police, fire and other emergency personnel clear and useable access to the building in the event of a fire, breach of the peace or life threatening emergency. He continues that traditionally frontage requirements have been subject to close judicial scrutiny and where frontage requirements are found to exceed the needs of public safety they have been struck down by our courts.
The Commissioner also relies on the decisions of two other jurisdictions. In Metzger v. Town of Brentwood, 374 A.2d 954 (N.H. 1977), the controlling zoning ordinance required two hundred (200) feet of frontage. Metzger's property had no more than one hundred twenty-three (123) feet of frontage. The New Hampshire Supreme Court reasoned that the establishment of frontage ordinances was the proper exercise of the police power, and that such regulations are generally designed to promote the public health, safety and welfare by assuring unobstructed access to police and fire personnel in emergency situations. That power, however, is not unlimited. It must be carefully balanced against the right of a property owner to use and enjoy his or her land without the burdens of unnecessary and unreasonable governmental restrictions. Therefore, even where the given frontage ordinance falls within the limits of the police power, the application of that ordinance to each individual lot must be measured against the arbitrary and unreasonable standard in order to strike a proper balance between the public gain and a private burden. Where the restriction as applied to the particular piece of property is unnecessary to accomplish a legitimate public purpose or the gain to the public is slight, but the harm to the citizen and his property is great, the exercise of police power becomes arbitrary and unreasonable and the court will afford relief under the constitution of that state.
This second citation is to the City of Baltimore v. Swinsky, 210 A.2d 368
(Md.Ct.App. 1964), in which the court noted that whether a frontage requirement has been violated can only be determined once a site plan or building permit application has been presented for approval. Without a plan, the court can do nothing more than speculate as to where the front door is to be located. Frontage compliance cannot be determined in the abstract.
Since § 10-3 of the Practice Book is directory, the appellant's reliance upon § 48-24 cannot be ignored.[3] She recites that the initial examination of the issue of the availability of § 48-24 must begin with the judicial rules of construction including "if [the] language [of the statute] is clear and unambiguous [it will be interpreted] in accordance with its plain meaning absent a compelling reason to the contrary." She cites the Office of Consumer Counsel v.Department of Public Utility Control, 252 Conn. 115, 121 (2000). The CT Page 15792 purpose of statutory construction is to give effect to the intended purpose of the legislature. State v. DeFrancesco, 225 Conn. 424, 436
(1995). In determining the intent of the legislature in enacting a specific statute, the court is to be guided by the language, purpose and legislative history of the legislation. Concept Associates, Ltd. v. Boardof Tax Review, 229 Conn. 618, 622 (1994).
It is the appellant's contention that a proper reading of the statute leads to the conclusion that "area requirements" mean those characteristics of the lot which impact upon or which are affected by the area of the lot. The "area requirements" is clearly plural. The argument advanced by the State is that the statute applies only to the minimum square footage requirement found in every zoning regulation and that is a singular requirement. It goes on to cite some of the dialogue by representatives in debate over § 48-24. As the court observed on its visit to the property, it is vacant and undeveloped, there were no cite plans or building permit applications on file. The appellant did not offer any plans or sketches depicting any configuration of any future building. Variance applications would have been premature. The Waterbury Zoning Enforcement Officer testified that the applicable frontage requirements were sixty (60) feet per single family dwelling and seventy-five (75) feet for a two family home. That officer did not have any reports or data of the police or fire department showing a frontage in excess of thirty (30) feet in order to assure adequate emergency access. The sixty (60) foot requirement appears to be an unreasonable and arbitrary exercise of police power.
To reiterate, prior to the condemnation of the property, the appellant had ninety-five (95) feet of frontage on Boyden Street. The Commissioner acquired sixty-five (65) feet of that frontage for the rotary safety program. That acquired frontage was to be leveled and transferred to the city at the end of the project with a highway maintenance agreement. After the project is completed, the city fire trucks and police cruisers will have unlimited and unobstructed access over the sixty-five (65) feet of acquired frontage. While she may not hold title to that sixtyfive (65) feet of frontage, that will not prevent the emergency personnel from using the acquired frontage to access the Rosa property. He concluded that there was no need for a variance at that time.
The Commissioner asserts that a frontage variance would have been granted upon request. Section 8-6 of the General Statutes authorizes a zoning board of appeals to grant a variance where a literal enforcement of the zoning regulations would result in exceptional difficulty or unusual hardship. Smith v. Zoning Board of Appeals, 174 Conn. 323, 326-29
(1978). Smith continues on to recite that there is a clear case of uncommon hardship beyond the control of the property owner when the state CT Page 15793 seeks to condemn a portion of his or her land and thereby renders it nonconforming to a minimal lot area restriction. It concluded that exceptional difficulty and unusual hardship was implicit in the proposed taking which rendered the appellant's property nonconforming and that no requirements of further proof of hardship devolved upon the state. The zoning enforcement officer agreed to some extent with the Commissioner with respect to the frontage variance being granted.
Smith went on to say that a condemning authority proceeding under § 47-24 is not automatically entitled to a variance. That caveat was followed by an acknowledgment that zoning boards of appeal remain responsible for determining whether a proposed variance is in harmony with the general purpose of the zoning regulations. The state referee could properly consider the variance as a factor affecting the market value of the remaining land. Smith v. Zoning Board of Appeals, supra;Talarico v. Conkling, 168 Conn. 194, 197.
Where the Commissioner has not complied with § 48-24, and the appellant is unable to insist that her property be fully acquired under that statute, the nonconformity from a partial taking could nonetheless affect the value of the land. Tolland Enterprises v. Commissioner ofTransportation, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV92 0508173 (sic) (April 28, 1993, Shea,S.T.R.).
Tolland also addressed the issue of the expense involved in curing the adverse consequences of the newly created nonconformity where the probability of succeeding on an application and hearing thereon before the zoning authority is highly probable. It noted that a prospective purchaser would diminish the price affected only by his estimate of the expenses to be incurred in obtaining that variance. That expense would be the cost of legal and engineering services in preparing the application and participating in the hearing thereon.
The parties entered into an informal stipulation as to the reasonable value of the legal services to be incurred. They are an application fee of one hundred ten ($110) dollars; counsel fees of seven hundred fifty ($750) dollars; and approximately two thousand ($2000) dollars to prosecute or defend a subsequent appeal of the proceedings before the zoning authority. However, no consideration was apparently given to engineering expense.
Although no evidence or agreement was offered in the reasonable value of such services in the preparation and presentation of the application, the court is sufficiently familiar with the work involved to conclude that a reasonable allowance for those services would be two thousand CT Page 15794 ($2000) dollars. See W.R. Associates of Norwalk v. Commissioner ofTransportation, 46 Conn. Sup. 355, 376-78; citing Tolland Enterprises v.Commissioner of Transportation, supra.
The finding that a frontage variance only will be required, together with the expenses to be incurred in obtaining said variance which aggregate forty-eight hundred sixty ($4860) dollars, require that sum to be added to the Commissioner's original award of sixty-six hundred ($6600) dollars. Thus, the total amount of the award to the appellant for the partial taking is eleven thousand four hundred sixty ($11,460) dollars.
Judgment may enter in accordance with the foregoing.
MORAGHAN, JUDGE TRIAL REFEREE.